**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

MINOR JGE (7-year old minor
through Next Friend Peter Tasso, Esq.), et al.,

      Plaintiffs,

v.                                   Case No.   1:14-CV-710 MV/WPL

UNITED STATES OF AMERICA, et.al.,

      Defendants.

## PLAINTIFFS' RESPONSE TO DEFENDANT UNITED STATES' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (DOC. 59)

COME NOW, Plaintiffs by and through their counsel of record, Erlinda O. Johnson, Esq.,

and hereby respectfully submit their response in opposition to defendant United States' Motion

to Dismiss for Lack of Subject Matter Jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1) and 12(c)

and in support thereof Plaintiffs submit the following:

## INTRODUCTION

On August 8, 2014, Plaintiffs' filed their original complaint against defendants for

damages for personal injury and constitutional violations for the actions of defendants from on or

about November 2011 through April 4, 2013.  (doc. 1)  On October 12, 2014, Plaintiffs filed

their amended complaint establishing, in part, a claim for relief timely and properly under the

Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), based on negligence of Defendant United

States that caused the commission of Wrongful Death, Sexual Assault of a Minor, Battery,

Sexual Contact of a Minor, Child Abuse, False Imprisonment (Kidnapping), Intentional

Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, and Loss of

Consortium, by DEA Confidential Informant Edward Quintana against the Plaintiffs – resulting

in debilitating physical and life-long emotional harm to the Plaintiffs.  (doc. 19)

1

The Amended Complaint sets out negligence as the liability element under the FTCA in Counts I-XVII (Doc. 19, ¶¶ 427-718, 276, 334, and 356).  Plaintiffs also allege facts set forth in the amended complaint which illustrate that Defendant United States violated *16 separate and distinct requirements of DEA Policy regarding Informant Handling* and *the Attorney General Guidelines regarding Use of Confidential Informants*, *inter alia*, as it relates to the establishment, activation, supervision, and control of DEA Confidential Informant Edward Quintana.  (doc. 19 ¶¶ 368-425)  Plaintiffs demonstrate that violations of non-discretionary requirements of DEA Policy and the Attorney General Guidelines render the discretionary function exception of the FTCA inapplicable and therefore this Court has jurisdiction over this cause of action.

## RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL JURISDICTIONAL FACTS

**No.1**: Plaintiffs do not dispute the facts in this paragraph.

**No.2**:  Plaintiffs do not dispute the facts in this paragraph.

**No.3**:  Plaintiffs do not dispute the facts in this paragraph.

**No. 4**: Plaintiffs do not dispute the facts in this paragraph.

**No. 5**:  Plaintiffs dispute the facts set forth in this paragraph.  Contrary to Defendant's assertion, Quintana had a history of attempting to kill people.  Indeed, he was charged with attempted murder in 2005, (doc. 19, ¶¶ 165-166), and also in 2005, threatened to kill his wife by placing a gun in her mouth.  (doc. 19, ¶ 159).

**No. 6**:  Plaintiffs do not dispute the facts in this paragraph.

**No.7**:  Plaintiffs do not dispute the facts in this paragraph.

**No.8**:  Plaintiffs dispute the facts set forth in this paragraph.  DEA Defendant Informant Edward Quintana was under the direction, control, management and supervision of Defendant from September 27, 2011 through and up to April 4, 2013.  (doc. 19, ¶¶ 57, 440).  Plaintiffs

agree that DEA conducted numerous debriefings with Quintana.

**No.9**:  Plaintiffs do not dispute the facts in this paragraph.

**No.10**:  Plaintiffs do not dispute the facts in this paragraph.

**No.11**:  Plaintiffs dispute the facts set forth in this paragraph.  (see doc. 19 ¶¶ 441, 459)

**No.12**:  Plaintiffs do not dispute the facts in this paragraph.

**No. 13**:  Plaintiffs do not dispute the facts in this paragraph.

**No. 14**:  Plaintiffs do not dispute the facts in this paragraph.

**No.15**:  Plaintiffs dispute the facts set forth in this paragraph.  Plaintiffs allege that defendant created a danger in the form of DEA Informant Edward Quintana, and therefore owed a duty of care to plaintiffs.  (doc. 19, ¶¶ 437, 445, 455, 466)

**No.16**: Plaintiffs do not dispute the facts in this paragraph.

**No.17**:  Plaintiffs do not dispute the facts in this paragraph.

**No.18**:  Plaintiffs do not dispute the facts in this paragraph.

**No.19:**  Plaintiffs do not dispute the facts in this paragraph.

## ARGUMENT

## LEGAL STANDARD FOR MOTIONS TO DISMISS UNDER RULE 12(b)(1)

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress."  *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994)(citations omitted).  A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998)("[T]he party invoking federal jurisdiction bears the burden of establishing its existence.").  Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to raise the defense of the court's "lack of jurisdiction over the subject matter" by motion.  Fed. R. Civ.

P.12(b)(1).  The United States Court of Appeals for the Tenth Circuit has held that motions to

dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial

attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a

challenge to the actual facts upon which subject-matter jurisdiction is based." *Ruiz v.*

*McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

> On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing
> a rule 12(b)(6) motion: the court must consider the complaint's allegations to be true. *See*
> *Ruiz v. McDonnell*, 299 F.3d at 1180; *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.
> 1981). But when the attack is aimed at the jurisdictional facts themselves, a district court
> may not presume the truthfulness of those allegations. A court has wide discretion to
> allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed
> jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence
> outside the pleadings does not convert the motion to a Rule 56 [summary-judgment]
> motion.

*Hill v. Vanderbilt Capital Advisors, LLC*, 2011 WL 6013025, at *8 (D.N.M. Sept. 30, 2011).

Where the court determines that jurisdictional issues raised in a rule 12(b)(1) motion are

intertwined with the case's merits, the court should resolve the motion under either rule 12(b)(6)

or rule 56. *See Franklin Sav. Corp. v. United States,* 180 F.3d 1124, 1129 (10th Cir. 1999);

*Tippet v. United States,* 108 F.3d 1194, 1196 (10th Cir. 1997).  "When deciding whether

jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether

resolution of the jurisdictional question requires resolution of an aspect of the substantive

claim.'"  *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003)(*quoting*

*Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1324 (10th Cir. 2002)).

## STANDARD FOR A MOTION TO DISMISS UNDER RULE 12(c)

A motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is reviewed

according to the same legal standard applicable to a motion to dismiss pursuant to Fed.R.Civ.P.

12(b)(6).  *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223 (10th Cir. 2009).

Thus, the Court must determine whether the complaint "include[s] 'enough facts to state a claim

to relief that is plausible on its face.'"  *Id.* (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)).  The allegations must be enough that, if assumed to be true, the plaintiff plausibly has a claim for relief.  *Id. (quoting Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir.2008)).  When matters outside the pleadings are presented to the Court considering a Rule 12(c) motion such as the motion at bar, "the motion must be treated as one for summary judgment under Rule 56."  Fed.R.Civ.P. 12(d).  "All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  *Id.*

A "[j]udgment on the pleadings should not be granted 'unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'"  *Park Univ. Enterprises, Inc. v. Am. Cas. Co. of Reading, Pa.*, 442 F.3d 1239, 1244 (10th Cir. 2006)(*citing United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000)).  "A court considering a motion for judgment on the pleadings should "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same."  *Park Univ. Enters. Inc. v. Am. Cas. Co. of Reading, Pa*., 442 F.3d at 1244.  The court must view the facts presented in the pleadings and draw the inferences therefrom in the light most favorable to the nonmoving party.  *See Ramirez v. Wal-Mart Stores, Inc.*, 192 F.R.D. at 304.  All of the nonmoving parties' allegations are deemed to be true, and all of the movants' contrary assertions are taken to be false.  *See Nat'l Metro. Bank v. United States*, 323 U.S. 454, 456-57 (1945); *Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1240 (10th Cir. 2000); *Freeman v. Dep't of Corr.*, 949 F.2d 360, 361 (10th Cir. 1991).

Furthermore, when considering a motion to dismiss, "the court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record."

*Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by*

*McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001).  A court may consider documents to

which the complaint refers if the documents are central to the plaintiff's claim and the parties do

not dispute the documents' authenticity.  *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941-

42 (10th Cir. 2002).

## I.      LAW REGARDING SOVEREIGN IMMUNITY AND THE FTCA

In 1946, the United States Congress enacted the Federal Torts Claim Act (FTCA), 28

U.S.C.A. §§ 1346(b), 2671-2680 which granted a limited waiver of sovereign immunity in that

the Federal Government may be sued for ordinary torts in the same manner as private citizens.

*See Ewell v. United States*, 776 F.2d  246 (10th Cir. 1985).   However, several statutory

exceptions to the waiver of sovereign immunity were established to protect the United States

from liability which comprise, in part, of the discretionary function exception and intentional tort

exception.[1]  As such, 28 U.S.C. § 2680(a) sets forth the "discretionary function exception" as

follows:

> **(a)** Any claim based upon an act or omission of an employee of the Government,
> exercising due care, in the execution of a statute or regulation, whether or not such
> statute or regulation be valid, or based upon the exercise or performance or the failure
> to exercise or perform a discretionary function or duty on the part of a federal agency
> or an employee of the Government, whether or not the discretion involved be abused.

[1] Notably, Defendant United States did not argue in its motion (doc. 59) that the Intentional Tort Exception applies in this case. Regardless, the Intentional Tort Exception would <u>not</u> apply to the claims set forth in the Amended Complaint – specifically Negligence of the United States that caused Wrongful Death and injuries to the Plaintiffs by a Non-Government Employee (i.e. DEA Confidential Informant).  More precisely, the Tenth Circuit has determined that the United States has a duty to prevent a Non-Employee from committing an Assault (and inferentially, other Intentional Torts), and the Court determined that failure to fulfill that Duty by the United States <u>does not bar a negligence claim</u> based on that resulting injury (under the Intentional Tort Exception (§2680(h)).  *Naisbitt v. United States*, 611 F.2d 135, 13-1353 (10th Cir. 1980); *See also Government Liability for the Negligent Failure to Prevent an Assault and Battery by a Federal Employee*, 69 Geo. L.J. 803, 822-825 (11)(citing *Brown v. United States*, 486 F.2d 24, 288 (8th Cir. 1973); *Rogers v. United States*, 397 F.2d 12, 15 (4th Cir. 1968); *Panella v. United States*, 216 F.2d 622, 624 (2nd Cir. 1954))(Government's alleged negligence in failing to provide supervision and control was <u>not</u> barred by exception in the Act of any claim arising out of assault and battery, since exception precludes recovery only when assault or battery is inflicted by Government employee); *See also United States v. Muniz*, 374 U.S. 150, 83 S. Ct. 1850 (1963)(suits under the Federal Tort Claims Act could be maintained against the United States by federal prisoners to recover for personal injuries sustained during confinement [*to include injuries committed by non-Federal Governmental employees*] in prison by reason of negligence of government employees). Negligence of the United States to prevent harm (Assault and Battery) by non-Federal Government employees is not barred under the Intentional Tort Exception to the FTCA.

28 U.S.C. § 2680(a).  In essence, the United States is immune from liability from claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty."  *Id*.  Moreover, the purpose of the discretionary function exception "is to prevent judicial, second guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort…. the exception protects only governmental actions and decisions based on considerations of public policy."  *See Gaubert v. United States*, 499 U.S. 315, 323, 111 S. Ct. 1267 (1991)(when employee violates mandatory regulation, discretionary function exception does not apply)(*quoting United States v. Varig Airlines*, 467 U.S. 797, 813 (1984); *Berkovitz v. United States*, 486 U.S. 531, 108 S. Ct. 1954 (1988)).

Indeed, Congress intended to preserve immunity for an *undefined* category of discretionary acts but at the same time, Congress abrogated that protection for ordinary day-to-day acts of governmental negligence.  *See Gray v. Bell*, 712 F.2d 490, 509 (D.C. Cir. 1983).   As a result, the critical acts of policy formulation by high ranking Government officials are protected by the discretionary function exception while the routine (day-to-day) acts of low level employees are not covered generally by the exception.  *See Gordon v. Lykes Bros. S.S. Co., Inc.*, 835 F.2d 96, 99-100 (5th Cir. 1988).  Unquestionably, a duty is only discretionary if the duty is not mandatory or not clearly specified in statute, regulation, or policy.  *See Weiss v. United States*, 787 F.2d 518, 523 (10th Cir. 1986).  Accordingly, in the event a Government official must act without the guidance of a fixed or readily ascertainable standard (statute, regulation, or policy), the decisions are discretionary and fall within the discretionary function exception.  *See Weiss v. United States*, 787 F.2d 518, 523 (10th Cir. 1986); *Barton v. United States*, 609 F.2d 977 (10th Cir. 1979).

Conversely, the element of choice or discretion is <u>not</u> satisfied when statute, regulation or policy establishes a course of action for government employees to follow – which in turn, prohibits or leaves no room for the exercise of discretion by the employee charged with the implementation of the statute, regulation, or policy.  *See Gaubert v. United States*, 499 U.S. 315, 322, 111 S. Ct. 1267 (1991); *Berkovitz v. United States*, 486 U.S. 531, 108 S. Ct. 1954 (1988). Indeed, the Tenth Circuit has determined that discretion is <u>not</u> involved if a standard (i.e. statute, regulation, or policy) exists by which a government employee's action is measured.  See *Barton v. United States*, 609 F.2d 977, 979 (10th Cir. 1979);[2] *see also Aragon v. United States*, 146 F.3d 819, 823 (10th Cir. 1998)("If a federal statute, regulation, or policy imposes specific, mandatory directives, conduct pursuant to those directives is not discretionary within the meaning of discretionary function exception to liability under Federal Tort Claims Act (FTCA), *as the employee has no rightful option but to adhere to the directive*") [italics added].

Therefore, when the government's action is contrary to established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, then no discretionary function can apply.  S*ee* 499 U.S. at 324.  For instance, a Government official does not have discretion to violate the binding laws, regulations, or policies that define the extent of the official duties (and powers) of the official.  *See Red Lake Band of Chippewa Indians v. United States*, 800 F.2d 1187, 1196 (D.C. Cir. 1986).  Indeed, the discretionary function exception does not apply based on failure of a Government employee to follow obligatory procedures in the application of rule or regulation.  *See Jayvee Brand, Inc., v. United States*, 721 F.2d 385, 389 (D.C. Cir. 1983).  Furthermore, the discretionary function exception does not apply in the event a federal employee violated a non-discretionary component or requirement of a statute, regulation,

---

[2] *See also Alabama Elec. Co-op., Inc. v. United States*, 769 F.2d 1523 (11th Cir. 1985); *Milligan v. United States*, 670 F.3d 686 (6th Cir. 2012).

or policy - and as a result, the violation will support an action under the FTCA.  *See Griffin v. United States*, 500 F.2d 1059, 1068-69 (3d Cir. 1974),[3] *receded from on other grounds by Berkovitz by Berkovitz v. United States*, 822 F.2d 1322 (3d Cir. 1987).

It should be noted that an internal guideline may also be considered a mandatory directive for purposes of regulation.  *See Ignatiev v. United States*, 238 F.3d 464, 467 (D.C. Cir. 2001)( Internal guidelines can be an actionable source of a mandatory obligation under Federal Tort Claims Act (FTCA)).[4]  Finally, the United States is not exempt from tort liability under the FTCA when Government employees fail to conform to pre-existing statutory, regulatory, and policy requirements.  *See Ingham v. Eastern Air Lines, Inc*., 373 F.2d 227, 238 (2nd Cir. 1967); *Griffin v. United States*, 500 F.2d 1059(3d Cir. 1974); *see also Limone v. United States*, 271 F. Supp. 2d 345 (D. Mass. 2003) (The discretionary immunity is inapplicable where the conduct complained of violated the constitution, federal law or agency policies).

It is also important to note "when federal investigations go so far afield from established policy and lawful authority as to endanger citizens' rights and safety, discretionary immunity unquestionably does not apply."  *See Birnbaum v. United States*, 588 F.2d. 319, 330-333 (2d Cir. 1978).[5]  Similarly, the failure to warn the public of dangerous conditions or activities by the United States is not protected by the discretionary function exception when the lack of warning is not the result of an affirmative policy decision *but mere negligence*.  *See Dube v. Pittsburgh Corning*, 870 F.2d 790, 794 (1st Cir. 1989), *abrogation recognized on other grounds by Shansky*

---

[3] *See also Faber v. United States*, 56 F.3d 1122, 1124 (9th Cir. 1995)(failure of United States to follow specifically prescribed Federal policy rendered inapplicable Discretionary Function Exception to FTCA).

[4] *See also Shuler v. United States*, 531 F.3d 930 (D.C.C. 2008) (*citing Ignatiev v. United States,* 238 F.3d 464, 466-67 (D.C.Cir.2001))(Plaintiff must demonstrate either that the government employee whose conduct caused him harm violated a specifically prescribed policy, or that the employee's harmful conduct was not within the sphere of discretion lawfully given him to exercise judgment about how best to achieve legitimate policy objectives)

[5] *See also Glickman v. United States*, 626 F. Supp. 171, 175 (S.D.N.Y. 1985).

*v. United States*, 164 F.3d 688 (1ˢᵗ Cir. 1999). Moreover, the failure to warn by the United States is not necessarily protected by the discretionary function exception based on a decision grounded in policy – rather, *the decision not to warn must be examined separately*. *See Smith v. United States*, 546 F.2d 872, 877 (10ᵗʰ Cir. 1976).

The United States' failure to warn of known dangerous propensities of an individual with whom the Government had a special relationship is <u>not</u> barred under the discretionary function exception of the FTCA. *See Jablonski v. United States*, 712 F.2d 391, 395-396 (9ᵗʰ Cir. 1983)(failure to warn household member of violent propensities of other household member)(*overruled on other grounds by Matter of McLinn*, 739 F.2d 1395 (9ᵗʰ Cir. 1984)); *Estate of Debra Davis v. United States,* 340 F.Supp.2d 79, 89-92 (D. Mass. 2004)(failure to warn the foreseeable victims of crimes by informants provided substantial assistance in murder of victim); *Marin v. United States*, 814 F. Supp. 1468, 1481-83 (E.D. Wash. 1992) (duty to warn "was not precluded on theory that government needed to maintain secrecy of the informant's release from custody and his whereabouts").[6] Finally, failure of the United States to warn of an extreme hazard or known danger may be so egregious that it cannot possibly be considered the result of deliberate policy or regulation choice and as a result, the discretionary function exception would not apply. *See United Airlines, Inc. v. Wiener*, 335 F.2d 379, 395-97 (9ᵗʰ Cir. 1964).

Notably, the discretionary function exception of the FTCA does not bar "[c]laims which arise out of the manner in which a particular situation is handled, and which are based on allegations that existing, valid regulations were wrongfully or negligently implemented" and

---

[6] *See also Stephens v. United States*, 472 F. Supp. 998 (C.D. Ill. 1979); *United States v. State of Wash.*, 351 F.2d 913 (9ᵗʰ Cir. 1965).

"mere exercise of judgment does not automatically insulate the government from liability under discretionary function exception to the Federal Tort Claims Act." *See Liuzzo v. United States*, 508 F. Supp. 923, 931 (E.D. Mich. 1981). Similarly, Courts have denied application of the discretionary function exception to claims involving failure to abide by agency regulations and policy regarding negligent supervision of informants and suitability of informants. See *McIntyre v. United States*, 447 F. Supp. 2d 54 (D. Mass. 2006) (agency negligent for failing to adhere to Government Agency Policy relative to management of Informants and Suitability of Informants); *Marin v. United States*, 814 F. Supp. 1468 (E.D. Wash. 1992); *Ostera v. United States*, 769 F.2d 716 (11th Cir. 1985)(citing *Liuzzo v. United States, supra*).[7] Additionally, Courts have recognized negligent actions under a theory in which law enforcement sponsors the freedom of informants and emboldens informants to commit crimes. *See Rakes v. United States*, 442 F.3d 7 (1st Cir. 2006); *Estate of Debra Davis v. United States,* 340 F.Supp.2d 79 (D. Mass. 2004) (thwarting prosecution and sponsoring freedom of Informants is non-discretionary).

Finally, thwarting prosecution and sponsoring the freedom of informants bestow a duty upon law enforcement to control and alleviate dangers posed by the informants. *See id*. at 89-92; *Estate of Richard Castucci v. United States*, 02-CV-11312 WGY, Doc. 141 (D. Mass. 2008)(breach of duty by the United States to prevent harm/murder of Richard Castucci by FBI informants). In other words, law enforcement officials that voluntarily intervene to prevent or

---

[7] *See also United States v. Salemme*, 91 F. Supp. 2d 141 (D. Mass. 1999) at 249 rev'd in part by *United States v. Flemmi*, 225, F.3d 78 (1st Cir. 2000) (District Judge's Finding of Fact in 661-page opinion regarding condemnation of the failure of the FBI to follow the Attorney General's Informant Guidelines, specifically the failure to weigh critical factors in considering the informant's suitability, including the nature of the matter under investigation and the importance of the information being furnished as compared to the seriousness of past and contemporaneous criminal activity of which the informant may be suspected, or how closely the FBI would be able to monitor his activities). Additionally, the Court in *Pooler v United States*, 787 F.2d 868 (3rd Cir. 1986), determined that a Complaint based on the use of an informant whose known tendencies toward violence suggested a risk of physical harm either to targets of an investigation or to all bystander may support a claim under the FTCA.

hinder prosecution of an informant (and to sponsor the freedom of the Informant) undertake a responsibility and a duty of care to protect others from the harms posed by the Informant.  *See Indian Towing v. United States*, 350 U.S. 61, 69, 76 S. Ct. 122 (1955)(duty of care for undertaking by the United States); *Loge v. United States*, 662 F.2d 1268 (8th Cir. 1981)(negligent performance of undertaking was applicable under the FTCA).[8]

Overall, the discretionary function exception does not provide umbrella immunity from liability under the FTCA based on negligent acts or omissions of employees of the United States. Rather, the employees of the United States must obey federal regulation, statute, and policy and use due care in the exercise of those duties as prescribed under federal regulation, statute, and policy.  Accordingly, employees of the United States that engage in negligent acts or omissions in a manner that fail to obey (or abide by) federal regulation, statute, and policy or fail to use due care in the exercise of those duties (as prescribed under federal regulation, statute, and policy) are <u>not immune</u> in their official status under the discretionary function exception.  Therefore, the United States Government is <u>not</u> immune from liability under 28 U.S.C. § 2680(a).

## **DISCRETIONARY FUNCTION EXCEPTION DOES NOT APPLY IN THIS CASE**

Manifestly, Plaintiffs bear the burden of proof to demonstrate the claim set forth in the complaint is allowed under the waiver of sovereign immunity established by the FTCA but the United States (Defendant) bears the ultimate burden of proving the applicability of the discretionary function exception (28 U.S.C. § 2680(a) of the FTCA).  *See Green v. United States*, 630 F.3d 1245, 1248-49 (9th Cir. 2011)(Plaintiff in action under FTCA has the burden of showing that there are genuine issues of material fact as to whether the discretionary function

---

[8] *See also Rogers v. United States*, 397 F.2d 12 (4th Cir. 1968); *Payton v. United States*, 679 F.2d 475 (5th Cir. 1982)(once Government assumes duty, it is under a non-discretionary duty of care); *Loritts v. United States*, 489 F. Supp. 1030 (D. Mass. 1980)(duty established for voluntary undertaking by the Government)

exception should apply, but the Government bears the ultimate burden of establishing that the exception applies).[9]  Quite clearly, Defendant did not prove the discretionary function exception applies to the claims set forth in the Amended Complaint under the FTCA and therefore, this Court has subject matter jurisdiction.

To begin, Plaintiffs do not set forth an allegation (directly or inferentially) in either the original or amended complaint (as well as other pleadings) that Defendant does not have the authority to establish and use informants as investigative resources – regardless of the quality of the investigation.  Indeed, the use of informants and the quality of investigations are clearly the result of discretionary decisions and acts by Defendant.  Moreover, Plaintiffs also do not argue or allege (directly or inferentially) in the amended complaint that Defendant does not hold the power to seek release of individuals from custodial settings to act as informants or to decide whether or not to utilize leverage of prosecution to seek cooperation of an individual to act as an Informant.[10]  Plainly, Defendant possesses authority to seek release of individuals and to prosecute (or not prosecute) individuals at the discretion of Defendant.

However, employees of the United States must follow and abide by prescribed statutes, regulations, and polices that govern the implementation of the duties, tasks, and behavior concerning each employee.  In particular, Federal Government employees must strictly obey mandatory statute, regulation, and policy requirements (for which there is no discretion) that govern the discharge of the responsibilities and tasks for which the employee is hired by the United States to perform.  As clearly settled by the U.S. Supreme Court in *Gaubert v. United*

---

[9]  *See also S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329 (3rd Cir. 2012) (burden of proving the applicability of the discretionary function exception of the FTCA is most appropriately placed on the government), *Fothergill v. United States*, 566 F.3d 248 (1st Cir. 2009); *Cestonaro v. United States*, 211 F.3d 749 (3rd Cir. 2000); *Kelly v. United States*, 241 F.3d 755 (9th Cir. 2001).

[10]  See *Ostera v. United States*, 769 F.2d 716 (11th Cir. 1985)(citing *Dalehite v. United States*, 346 U.S. 15, 35-36, 73 S. Ct. 956, 967-968, 97 L.Ed 1427 (1953)); *see also Pooler v United States*, 787 F.2d 868 (3rd Cir. 1986).

*States*, *supra,* failure of federal employees to abide by non-discretionary requirements of statute, regulation, and policy opens the door to suit under the FTCA.  *See* 499 U.S. at 324

Defendant's arguments that "Plaintiffs' injury comes about because of the independent actions of Quintana, not the DEA's actions in recruiting him as a confidential source" and that Plaintiffs' theory of liability depends on a series of events, completely miss the mark.  (doc. 59, pp. 21-22)  For example, Plaintiffs do not allege that, 1) Quintana would not have been used as a confidential source – rather, Defendant violated the numerous requirements of DEA Policy and Attorney General Guidelines in establishing and handling Quintana; 2) Plaintiffs do not allege Defendant bonded Quintana out of jail – rather Quintana bonded out on his own; (3) plaintiffs do not allege that either state or federal authorities would have prosecuted Quintana.  Indeed, Quintana was already charged and under prosecution in state court– no decision to prosecute Quintana had to be issued by the prosecutor.  Defendant's argument that plaintiffs' theory of liability depends on a chain of events simply misapprehends Plaintiffs' claims.

It is well settled that federal law enforcement officials must strictly obey mandatory statute, regulation, and policy requirements (for which there is no discretion) that govern their duties, functions and activities such as the establishment and use of informants (as well as other additional and various non-discretionary duties) that provide cooperation on behalf of federal law enforcement officials in exchange for particular benefits.  *See Couzado v. United States*, 883 F.Supp. 691, 695 (S.D.Fla. 1995), *affirmed in part, reversed in part on other grounds by* 105 F.3d 1389 (11th Cir. 1997).  Indeed, the U.S. Attorney General Guidelines regarding use of confidential informants and DEA Policy (DEA Agent Manual) establish specific requirements and prohibitions regarding the establishment and use of informants.  (exhibit 1)  Most importantly, the non-discretionary requirements of DEA Policy and the Attorney General

Guidelines regarding establishment and handling of Confidential Informants were created as measures to <u>control the actions of DEA employees</u> of the United States in order to prevent, *inter alia*, the commission of harm to others by confidential informants or prospective confidential informants.

Here, plaintiffs do <u>not</u> allege that the causes of action in the amended complaint are based on violations of DEA Policy and the Attorney General Guidelines by Defendant. Rather, Plaintiffs explain in great detail in the amended complaint and other pleadings that the causes of action are based on <u>negligence</u> for which Defendant owed an ordinary duty of care as a private citizen to Plaintiffs under New Mexico State law and Defendant breached the duty of care to the Plaintiffs. (doc. 19, ¶¶ 168-169, 171-172, 72, 76, 84, 358-59, 334, 356-357; doc. 51, pp. 13-29, 32-36) In addition, the amended complaint and other pleadings illustrate with particularity that Plaintiffs suffered wrongful death and injury as a result of the breach of duty by Defendant. Therefore, Defendant is liable to Plaintiffs for the wrongful death and injuries under New Mexico State law. *See Karbel v. Francis*, 103 N.M. 468, 709 P.2d 190 (N.M. App. 1985); doc. 51, pp. 32-37; doc. 19, ¶¶ 124, 360-362, 364, 91.

It is important to note that Plaintiffs outline the large number of DEA Policy and Attorney General Guideline violations in the original and amended complaint (as well as other pleadings) in order to inform Defendant of the breaches of policy and regulations as well as the anticipation of Defendant's effort to apply the discretionary function exception to the claims set forth by Plaintiffs under the FTCA.[11] Consequently, Plaintiffs do <u>not</u> allege that the causes of action in the complaints are based on violations of federal statute, regulation, or policy.

---

[11] See also *Clark v. United States*, 2014 WL 7653392 (D.N.M. 2014) (allegations of statute, regulation, and policy violations included in complaints for sole purpose of anticipating the government's arguments regarding the applicability of the discretionary function exception to the FTCA, which were sure to follow).

Therefore, the government's reliance on *Dalrymple v. United States*, 460 F.3d 1318, 1327 (11th Cir. 2006) bears no applicability here and is misplaced.[12]

Finally, in an attempt to do nothing other than mock plaintiffs, Defendant writes, "Plaintiffs may as well sue Quintana's mother for giving birth to him – after all, that too technically enabled Quintana to injure Plaintiffs."  (doc. 59, p. 23)  Unquestionably, Defendant's overall conduct concerning blatant violations of rules, procedures, policies, regulations, and law regarding establishment, supervision, and use of Confidential Informants, as demonstrated in plaintiffs' amended complaint and the related civil case of *Romero v. United States*, 14 CV 640 MV/WPL, (doc. 23), coupled with the outrageous government conduct involving widespread use of misrepresentations, false statements, and material omissions in the criminal investigation (Operation Smack City), illustrates a conscious disregard for causing/resulting harms to the public.  Notably, Defendant is fully aware that Plaintiffs read and comprehend the pleadings prepared and filed by Defendant and the statement that Plaintiffs "may as well sue Quintana's mother for giving birth to him" mocks and belittles the injuries experienced by Plaintiffs as well as further magnifies the mental anguish suffered by Plaintiffs.  At best, this statement reflects Defendant's arrogance as it relates to the conscious disregard for causing harms to individuals through Defendant's actions and inactions.

A.  **ANALYSIS OF THE DISCRETIONARY FUNCTION EXCEPTION IS CONDUCTED PURSUANT TO THE TWO-PRONGED TEST IN *BERKOVITZ v. UNITED STATES***

Analysis of the discretionary function exception is based on a two-pronged test to determine the applicability of the exception.[13]  In the event both prongs are satisfied, the

---

[12] Indeed, Defendant acknowledges that the Amended Complaint is not based on negligent violations of statute, regulation, or policy.  Specifically, Defendant writes, "Plaintiffs claims are *not* based on DEA's failure to adhere to any internal policies regarding the alleged recruitment of Quintana as a CS." [italics added].  (doc. 59, p. 19)

discretionary function exception is applied and the court of venue will lack subject matter jurisdiction.  *See U.S. Aviation Underwriters, Inc. v. United States*, 562 F.3d 1297, 1299 (11th Cir. 2009); *Berkovitz v. United States*, 486 U.S. 531, 108 S. Ct. 1954 (1988).  Importantly, the government bears the burden of proving both prongs of the *Berkovitz* test in order to apply the discretionary function exception to bar claims under the FTCA.  *See Reed v. United States Dep't of the Interior,* 231 F.3d 501, 503 (9th Cir. 2000).

The first prong determines whether or not the challenged acts are "discretionary in nature"- meaning whether or not the acts "involve an element judgment or choice."  *See Gaubert v. United States*, 499 U.S. 315, 322 (1991); *Berkovitz v. United States*, 486 U.S. 531, 108 S. Ct. 1954 (1988).  However, the first prong is not satisfied if the "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow."  *See OSI v. United States*, 285 F. 3d 947, 952 (11th Cir. 2002)(quoting *Berkovitz v. United States*, 486 U.S. 531, 534 (1988))("when statutes, policy, or mandatory regulations dictate the actions of employees, there is not discretion to deviate from the prescribed course of action ***and the exception does not apply***") [italics added].  In other words, if the first prong is not satisfied (actions are not discretionary), then analysis under the *Berkovitz* test ceases and the discretionary function exception does not apply. [14]  Therefore, the claims under the FTCA are allowed under the waiver

---

[13] Under the FTCA, liability is determined by State law.  However, Federal law governs procedural issues and the interpretations of the FTCA that includes statutory exceptions (Discretionary Function Exception, Due Care Clause, and Intentional Tort Exception) to the FTCA.  See *United States v. Neustadt*, 366 U.S. 696, 81 S. Ct. 1294 (1961); *Johnson v. United States*, 576 F.2d 606 (5th Cir. 1978).

[14] As part of the analysis of the first prong, a Court evaluates whether or not a federal employee exercised Due Care in implementing the non-discretionary dictates of the statute, regulation, or policy – commonly known as the due care clause.  See *Crumpton v. Stone*, 59 F.3d 1400 (D.C. Cir. 1995); *Welch v. United States*, 409 F.3d 616 (4th Cir. 2005).  In the event the federal employee did not exercise due care in following the non-discretionary requirements of statute, regulation, or policy, the first prong is not satisfied and the Discretionary Function Exception does not apply. See *Cope v. Scott*, 45 F.3d 445 (C.A.D.C.1995).  It is also important to note Federal Law rather than State Law determines whether or not the government employee exercised "due care" in the execution of the Federal Statute, Regulation, or Policy.  *See Hydrogen Technology Corp. v. United States*, 831 F.2d 1155 (1st Cir. 1987).

of sovereign immunity and the Court has subject matter jurisdiction.  *See Elder v. United States*, 312 F.3d 1172 (10th Cir. 2002).

In the event the first prong is satisfied and the challenged act involves "discretion or choice," the second prong is then applied.   However, if the second prong is not satisfied, then the discretionary function exception does not apply and the claims under the FTCA are not barred under the exception.  Consequently, the claims under the FTCA are allowed under the waiver of sovereign immunity and the Court has subject matter jurisdiction.  See *Elder v. United States*, 312 F.3d 1172 (10th Cir. 2002).

The second prong determines whether or not the decision is subject to "considerations of public policy" – meaning the discretionary function "exception protects only governmental actions and decisions based on considerations of public policy."  *See* 499 U.S. at 323.  More precisely, the focus of the inquiry is "not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis."  *See* 499 U.S. at 325; *see also Myers v. United States*, 652 F.3d 1021 (9th Cir. 2011)(matters of scientific and *professional judgment*, particularly *judgments concerning safety*, are rarely considered to be susceptible to social, economic, or political policy, for purposes of discretionary function exception to the FTCA liability).   In determining the applicability of the discretionary function exception to the FTCA liability, *court's inquiry looks at nature of conduct*, rather than status of actor, and discretionary element is not met where federal statute, regulation, or policy specifically prescribes a course of action for employee to follow.  652 F.3d at 1028.  For the discretionary function exception to FTCA liability to apply, it is insufficient for the government to show merely that some choice was

involved in decision-making process; rather, balancing of policy considerations is necessary prerequisite. *Id.* [italics added].

Notably, the decisions of federal law enforcement officials are <u>not</u> indemnified under the second prong of the *Berkovitz* test to determine the applicability of the discretionary function exception under the FTCA. More specifically, "[w]hile law enforcement involves exercise of a certain amount of discretion on the part of individual officers, such decisions *do not involve* the sort of generalized social, economic and political policy choices that Congress intended to exempt from tort liability." [italics added] *See Garcia v. United States*, 826 F.2d 806, 809 (9th Cir. 1987)(*citing Caban v. United States*, 671 F.2d 1230 (2d Cir.1982)). In other words, the decisions and actions of *<u>individual</u>* federal law enforcement officials do not involve matters of social, economic, and political policy. As a result, application of the second prong of the *Berkovitz* test to decisions and acts of individual federal law enforcement officials is irrelevant – particularly those decisions and acts that are conducted by individual law enforcement officials in a manner that violates statute, regulation, or policy.

Indeed, Courts have rejected propositions of the United States that decisions regarding matters, *inter alia*, relative to management of Informants were discretionary functions. *Limone v. United States*, 271 F. Supp. 2d 345, 353 (D. Mass. 2003). In *Limone*, the Court noted:

> The defendants' voluminous motions to dismiss miss the forest for the trees. They argue over and over again that certain facts taken in isolation do not state actionable claims, ignoring the big picture. *Id*. at 348. This case is about much more than minutiae of discrete FBI decisions, viewed in isolation.

*Id.* at 353. Similarly, in the Defendant's Motion (doc. 59), Defendant attempts to piecemeal the theory of causation (Wrongful Death and Personal Injuries) set forth in the Amended Complaint, missing the mark and overlooking the forest for the trees.

**1.  <u>First Prong of the *Berkovits* Test is Not Met in this Case</u>**

To start, <u>non-discretionary</u> requirements and procedures outlined in federal agency regulation and policies are ***commands*** to Government employees to discharge duties, tasks, and behavior in a particular and specific manner which do not involve matters of discretion, choice, or options in the implementation of those duties, tasks, and behavior (by the employees of the United States).  499 U.S. at 322.  Indeed, established federal agency regulation and policy have previously undergone formulation (by high-level Governmental administrators and executives as well as directives from Congress) designed to create specific discretionary and non-discretionary requirements to govern the implementation of particular duties, tasks, and behavior by Government employees.  Clearly, Congress did not create (nor intend to allow) federal law enforcement agencies to possess carte blanche authority to enforce laws of the United States without rules governing the duties, tasks, and behavior of the law enforcement officials.  *See Couzado*, 883 F.Supp. 691 at 695-696 (*quoting Autrey v. United States*, 992 F.2d 1523 (11th Cir. 1993)).

In order to determine whether or not particular agency regulations and policy are discretionary or non-discretionary, Courts have looked to the language of particular rules and procedures outlined in the regulations and policy.[15]  For instance, the words "shall," "must," "will," and "should" are expressions of command and therefore, these words do <u>not</u> afford federal employees <u>any</u> discretion, choice, or options regarding the implementation of particular duties, tasks, and behavior by the employees of the United States.[16]  In contrast, the words "practicable," "feasible," and "possible" are expressions of choice and therefore, these words

---

[15] *See Aragon v. United States*, 146 F.3d 819 (10th Cir. 1998) (This Court requires the prescribed course of conduct be specific and mandatory); *Clark v. United States*, 2014 WL 7653392 (D.N.M. 2014); *Elder v. United States*, 312 F.3d 1172 (10th Cir. 2002).

[16] Refer to Merriam-Webster Dictionary for definitions of the words "shall," "must," "will," and "should" as expressions of command.

allow federal employees to use discretion in the implementation of specific duties, tasks, and behavior by the employees of the United States.  More specifically, non-discretionary requirements and procedures outlined in federal agency manuals are unequivocally regulation and policy commands to the employees of the United States – commands which individuals as employees of the Federal Government must obey.

As it relates to Defendant's breaches of agency policy, the Complaint and Amended Complaint (as well as other pleadings) outline 16 separate and distinct violations of DEA Policy concerning Confidential Source Handling (establishment and use of Confidential Sources) and Standards of Conduct as well as the Attorney General Guidelines regarding use of confidential informants.  (Exhibit 1).[17]  Specifically, the violations of DEA Policy and Attorney General Guidelines committed by Defendant are summarized as follows:

1) Defendant violated DEA Policy regarding confidential sources – specifically, Defendant did not obtain prior approval from the Lead State Prosecutor to utilize Defendant DEA Informant Quintana (based on State of New Mexico charges) as a DEA Confidential Informant in *accordance* with the required procedures outlined in DEA Agent Manual, Chapter 66, Confidential Sources § 6612.1:[18] General Policies, Section G(1) states, "[t]he following additional requirements ***shall*** apply to the DEA's development of the defendant/confidential source" – (1) "The approval of the appropriate prosecutor (i.e., federal, state, or local) ***will*** be obtained *prior* to seeking cooperation of a defendant" [italics added].  (exhibits 2 and 3).  It is important to note the results of the analysis and applicability of this specific policy violation to the FTCA claims are illustrated in detail below and in the Complaint

---

[17] Based on the voluminous nature of the DEA Agent Manual, Plaintiffs have attached numerous specific Exhibits (exhibits 3-7) relative to DEA Policy concerning Confidential Source Handling and DEA Standards of Conduct regarding DEA employees and supervisors – rather than the entire DEA Agent's Manual.

**[18] Defendant United States has pointed out that the DEA Manual on which Plaintiffs rely is *outdated*. However, it is important to note that defendant does not deny the requirements of DEA policy set forth in Plaintiffs' pleadings were in effect in 2011-2012.  Therefore, the policies were in effect in 2011-2012.  Whether they may have been renumbered or appendices incorporated into the body of the manual is of no moment. Indeed, it would be false representations to the Court for defendant to claim the procedures and requirements of the policies set forth in the original complaint, amended complaint and other pleadings were deleted and not in effect in 2011 and 2012.**

and amended complaint  (doc. 1, ¶¶  158-169, 177, 410, 436-441; doc. 19, ¶¶335, 382-384, 394-396, 84. 180, 194).

2)   Defendant violated DEA Policy regarding management review of confidential sources (immediate supervisors) which requires, "[t]he immediate supervisor is responsible for assuring that all handling of confidential sources by employees under his supervision is in compliance with the Domestic Operations Guidelines – Factors that *will* be routinely considered by the immediate supervisor in carrying out this responsibility include that:  (3)  Any required external approvals for utilization are properly and fully obtained [italics added].  *See* Chapter 66, Subsection 6612.6- 6612.61(A).  In this instance, the United States violated DEA Policy regarding <u>Management Review</u> (by the Group Supervisor) through the decision to not obtain  prior approval from the lead State Prosecutor regarding use of Edward Quintana as a DEA Informant.  (exhibits 2 & 4)  It is important to note the results of the analysis and applicability of this specific policy violation to the FTCA claims are illustrated in detail in the Complaint and amended complaint. (doc.1, ¶¶ 410, 442-44; *see also*  doc. 19, ¶¶  374-375, 390, 386, 388).

3)   Defendant violated DEA Policy regarding management review of confidential sources – which requires "[t]he SAC *shall* assume a responsibility paralleling that of the immediate Supervisor for pertinent factors…This does not relieve the immediate Supervisor of his responsibilities, but instead provides for a 'Double Check.'" (referring to Defendant Confidential Sources) and (B) "On a quarterly basis, the SAC (or ASAC) *shall* conduct a review of all active Confidential Source Files with the Supervisors under his command[19] – the review will cover the following points:  (4) Whether the appropriate initial or ongoing approval requirements are being met."  *See* Chapter 66, Subsection 6612.6 -6612.62(A) [italics added].  In this instance, Defendant violated DEA Policy regarding management review (by the Special Agent in Charge or Assistant Special Agent in Charge) through the decision to not obtain prior approval from the lead state prosecutor regarding use of Edward Quintana as a DEA Informant <u>and</u> to obtain continued use of Edward Quintana from the lead State Prosecutor based on "nature and scope of the defendant's cooperation throughout the period of his use.  (exhibit 4)  It is important to note the results of the analysis and applicability of this specific policy violation to the FTCA claims are illustrated in detail in the Complaint and Amended Complaint.  (doc. 1, ¶¶ 410, 447-448); (see also, doc. 19, ¶¶ 387, 389-390)

---

[19] In paragraph 19 of the affidavit by ASAC Waite, attached to defendant's motion to dismiss (doc. 59-1), the ASAC notes that quarterly management review reports are no longer required.  However, plaintiff's argument is <u>not</u> about Quarterly Management Review Reports (QMR).  The issue in the pleadings on this topic is the mandatory requirements of DEA policy mandating that Special Agents in Charge (SACs) must approve establishment and use of Defendant CI's as well as the mandatory requirement that the SAC conduct quarterly reviews of all active CI files; not that the SAC must write a quarterly review <u>report</u>.

4) Defendant violated DEA Policy regarding confidential sources in that Defendant did not advise the lead state prosecutor of the "nature and scope of the defendant's cooperation throughout the period of his use" regarding Defendant DEA Informant Quintana, and Defendant did not seek "the procedures and frequency of this reporting" from the Lead State Prosecutor in *accordance* with the required procedures outlined in DEA Policy regarding Informant Handling.  (*See* DEA Agent Manual, Chapter 66, § 6612.1(G)(3), exhibit 3)  It is important to note the results of the analysis and applicability of this specific policy violation to the FTCA claims are illustrated in detail in the Complaint and Amended Complaint.  (doc. 1 ¶¶ 410, 450-454; see also doc. 19, ¶¶ 335, 382-383, 393-396, 84-85, 180-184)

5) Defendant violated DEA Policy regarding confidential sources by forming an agreement and understanding <u>between</u> Defendant and DEA Informant Quintana for approximately <u>365 consecutive days</u> in which State of New Mexico charges would be reduced or dismissed against Defendant DEA Informant Quintana - in clear violation of DEA Policy Manual which states, "[t]he Prosecuting Attorney *shall* have *sole authority* to decide whether or not to prosecute a case against a Defendant/ Confidential Source."  *See* DEA Manual, Chapter 66, § 6612.1(G)(2). In this instance, Defendant represented falsely to DEA Informant Quintana that the authority to reduce or dismiss the State of New Mexico charges rested with the Defendant rather than the State of New Mexico [italics added].  (exhibit 3)  It is important to note the results of the analysis and applicability of this specific policy violation to the FTCA claims are illustrated in detail in the Complaint and Amended Complaint. (doc. 1, ¶¶ 410, 455-457; doc. 19, ¶¶ 394-395, 397, 187).

6) Defendant breached the Attorney General's Guidelines regarding Use of Confidential Informants during the registration process of DEA Informant Quintana through the deliberate evasion of acquiring approval from the "state or local prosecuting office" - specifically, Section II(B)(6) requires that "any promises or benefits, and the terms of such promises or benefits, that are given a CI by any FPO or any *state or local prosecuting office*" [italics added] are documented and included "in the CI files."  (exhibit 1)  Therefore, Defendant breached the Attorney General's Guidelines by authorizing Edward Quintana to operate as a DEA Informant *without the approval* (and knowledge) of the lead State Prosecutor that would include the "promises or benefits, and the terms of such promises or benefits" for DEA Informant Quintana in exchange for cooperation.  It is important to note the results of the analysis and applicability of this specific policy violation to the FTCA claims are illustrated in detail in the Complaint and Amended Complaint.  (doc. 1, ¶¶ 410, 458-461; doc. 19, ¶¶ 393-395, 180-188)

7) Defendant violated DEA Policy regarding the handling of confidential informants- specifically, Defendant did <u>not</u> conduct a risk assessment and criminal background investigation of the *well-documented* historically violent and foreseeably dangerous

Defendant DEA Informant Quintana in *accordance* with the required procedures outlined in DEA Policy regarding Handling of Confidential Informants. It is important to note the results of the analysis and applicability of this specific policy violation to the FTCA claims are illustrated in detail in the Complaint and amended complaint. (doc. 1, ¶¶ 410, 462-47; *see also* doc. 19, ¶¶ 335, 337-338, 399, 404-405)

8)   Defendant violated DEA Policy regarding investigation and evaluation of individuals who will render services to DEA- specifically, Appendix B,[20] Section B(2), of the DEA Policy Manual Domestic Operation states, "[b]efore an individual is asked to render services, in addition to supplying information, a more extensive investigation and evaluation of the individual *shall* be conducted" – meaning, that a thorough and comprehensive criminal and intelligence background investigation must be conducted of an individual that is to be utilized as a DEA Informant that provides service (i.e. purchase of evidence, introduction of undercover personnel, other services) (*See* exhibit 5) [italics added].  In this instance, DEA Informant Edward Quintana was utilized by Defendant and the Defendant did not conduct a more extensive investigation and evaluation of Edward Quintana.[21]  It is important to note the results of the analysis and applicability of this specific policy violation to the FTCA claims are illustrated in detail in the Complaint and amended complaint. (doc. 1, ¶¶ 410, 462-471; see also doc. 19, ¶¶ 404-405)

---

[20] In paragraph 18 of the affidavit by ASAC Waite, attached to defendant's motion to dismiss (doc. 59-1), the ASAC writes, "[t]he plaintiffs in the above-captioned case cite repeatedly to "Appendix B" of the DEA's internal manual" and "[a]s of 1995, that Appendix was abolished."  However, the ASAC does **NOT** claim the requirements and contents of Appendix B were abolished or are no longer mandatory constraints, rules, and procedures.  For instance, the requirements, rules, and procedures of Appendix B may simply have been incorporated into the overall DEA Manual rather than remain as an appendix B.  Appendix B contains 10 pages of highly detailed commands to Agents regarding undercover operations, rules regarding Informants, surveillance and electronic surveillance, enforcement activities, and coordination with attorneys regarding investigations.  Clearly, the ASAC would have claimed these contents of Appendix B were no longer valid (in whole or in part).  Indeed, the ASAC would have claimed the specific citations (referenced by Plaintiffs) in Appendix B were no longer valid AND/OR were not violated.  Instead, the ASAC uses word games in an attempt to mislead and detract from the continued existence of the specific policy requirements.

[21] The DEA Policy Manual, Appendix B - Domestic Operations Guidelines, Section II. Sources, Informants, and Defendant Informants:  (B)(3)(d) Informants clarifies the importance of understanding the hazards of Defendant DEA Informants by stating, "Individuals in the following categories represent particular risks as informants: **Individuals with two or more felony convictions.**" (exhibit 5).  As set forth in the Amended Complaint (doc. 19, ¶¶ 148-178), Defendant DEA Informant Edward Quintana had numerous arrests for violent crimes, two felony convictions and one full Misdemeanor conviction in the State of New Mexico, and therefore, represented a particular risk of danger to the public - which required independent evaluation and approval or denial by the lead State Prosecutor as a safety mechanism to protect the public from the foreseeable danger of harm posed by Edward Quintana.

9) Defendant violated the Attorney General Guidelines regarding Use of Confidential Informants - specifically, the Defendant did <u>not</u> conduct a Risk Assessment and Suitability Determination.  Section II(A)(1) requires "[t]he case agent ***must*** address the following:  (m) "whether the person is reasonably believed to pose a danger to the public or other criminal threat" of the *well-documented* historically violent and foreseeably dangerous Defendant DEA Informant Quintana [italics added].  (exhibit 1)  It is important to note the results of the analysis and applicability of this specific policy violation to the FTCA claims are illustrated in detail in the Complaint and amended complaint.  (doc. 1, ¶¶  410, 472-484; see doc. 19, ¶¶ 404-408).

10) Defendant violated DEA Policy regarding handling of confidential informants-specifically, Defendant did <u>not</u> manage, supervise, direct, and control the well-documented historically violent and foreseeably dangerous Defendant DEA Informant Quintana in accordance with the required procedures outlined in DEA Policy regarding Handling of Confidential Informants.[22]  It is important to note the results of the analysis and applicability of this specific policy violation to the FTCA claims are illustrated in detail in the Complaint and amended complaint. (doc. 1, ¶¶ 410, 485-496; see also doc. 19, ¶¶ 335-336, 361-364).

11) Defendant violated DEA policy regarding Standards of Conduct - specifically Defendants violated the requirement in the Standards of Conduct for <u>Employees of DEA</u> to obey and abide by DEA Policy regarding Handling of Confidential Sources

---

[22] In paragraph 14 of the affidavit by ASAC Waite, attached to defendant's motion to dismiss (doc. 59-1), the ASAC writes, "[t]ypically, it is incumbent on the source to inform his or her handling Agent that his or her contact information has changed."  However, this statement is contradicted by,

> DEA Policy on establishing confidential sources:  §§ 6612.2, 6612.24, subsection (F) which states, "[f]or each Confidential Source in an active status, the Controlling Agent will review the Confidential Source File on quarterly basis to assure it contains all relevant and current information… Where material fact that was earlier reported on the DEA-512 Confidential Source Establishment Report is no longer correct (e.g. a change of criminal status, **means of locating him**, etc.), a supplemental DEA-512 should be submitted with the corrected entry."  The policy requirement continues by stating, "If the new information is routine, the approval of the immediate Supervisor on the DEA-512 will suffice, regardless of the original level of approval."  Consequently, Defendant was aware (or should have been aware/required to be aware)  of the residential location of DEA Informant Quintana from the end of August 2012 through February 20, 2013 (approximately 6 months) based on the requirement outlined in DEA Policy.  It is also important to note that DEA Policy Manual on Utilization of Confidential Sources, §§ 6612.3,  6612.31 General Policies (D) requires, "[a]t least two Agents must be capable of contacting a Confidential Source" and §6612.32 Debriefing of Confidential Sources (E) requires "Confidential Sources will be debriefed subsequently, on a periodic basis, at least every 90 days."  As such, debriefings of DEA Informant Quintana would result (or should have resulted) in learning the residential location of DEA Informant Quintana as well as whether or not DEA Informant Quintana resided together with others as Household Members.  (doc. 19, ¶¶ 361-362)

and the controlling Attorney General Guidelines regarding Confidential Informants. (exhibit 6)  It is important to note the results of the analysis and applicability of this specific policy violation to the FTCA claims are illustrated in detail in the Complaint and amended complaint.  (doc. 1, ¶¶ 410, 424-432; doc. 19, ¶¶ 371-373, 377, 379, 384).

12) Defendant violated DEA Policy regarding the requirement in the Standards of Conduct (relevant to DEA Supervisory Responsibilities) to supervise, manage, direct, and control the <u>Employees of DEA</u> to obey and abide by DEA Policy regarding handling of confidential sources and the controlling Attorney General Guidelines regarding confidential informants.  It is important to note the results of the analysis and applicability of this specific policy violation to the FTCA claims are illustrated in detail in the Complaint and amended complaint.  (doc. 1, ¶¶ 410, 424-432; doc. 19, ¶¶ 371-373, 377, 379, 381)

13) Defendant violated the Attorney General Guidelines regarding Use of Confidential Informants - specifically, § I(E) addresses the Duty of Candor requirement regarding the Use of Confidential Informants - specifically, "[e]mployees of the entities to which these Guidelines apply have a Duty of Candor in the discharge of their responsibilities pursuant to these Guidelines."  In essence, Defendant recruited, established/registered, activated, directed, managed, supervised, and controlled DEA Informant Edward Quintana in such a manner and method as <u>to violate DEA Policy and the Attorney General Guidelines regarding Confidential Informants</u>.  (exhibit 1) (It is important to note the results of the analysis and applicability of this specific policy violation to the FTCA claims are illustrated in detail in the Complaint and amended complaint.  (doc. 1 ¶¶ 410, 433-434, doc. 19, ¶¶ 371, 380-381).

14) Defendant violated DEA Policy by "[e]ndangering the Safety of or causing injury to personnel through carelessness or failure to follow instructions."  *See* DEA Manual, Appendix A, Chapter 2735.19 Penalty Guidelines, 14.  Patently, Defendant endangered the safety of others and caused injury to others (expressly, the Plaintiffs) through "carelessness and the failure to follow instructions" clearly outlined in DEA Policy.  (exhibit 7)  It is important to note the results of the analysis and applicability of this specific policy violation to the FTCA claims are illustrated in detail in the Complaint and amended complaint.  (doc. 1, ¶¶ 410, 424-432; doc. 19, ¶¶ 378-379).

15) Defendant violated the Attorney General Guidelines regarding Use of Confidential Informants - specifically, § II(D)(5)(a) which requires, "[p]rior to utilizing a state or

local prisoner, probationer, parolee, or supervised <u>releasee</u> as a Confidential Informant, a Field Manager of a JLEA (DEA)"  "*must* obtain the permission of a state or local prison, probation, parole, or supervised release official with authority to grant such permission" [italics added].  Consequently, defendant's violation of the State of New Mexico court order (without approval of the Court) regarding Edward Quintana's conditions of release (EXHIBIT 1 attached hereto and doc. 19, EXHIBIT 2) is a clear breach of the Attorney General Guidelines.  It is important to note the results of the analysis and applicability of this specific policy violation to the FTCA claims are illustrated in detail in the Complaint and amended complaint. (doc. 1, ¶¶  410, 497-508; doc. 19, ¶¶ 419-424).

16) Defendant violated DEA Policy through breach of the law of the State of New Mexico – specifically, DEA Policy requires adherence by DEA Employees to the laws of the State as "an ordinary citizen" (unless otherwise authorized by the State), and Defendant's violation of the State of New Mexico Court Order regarding Edward Quintana's conditions of release (doc. 19, exhibit 2) is a clear breach of DEA Policy.   It is important to note the results of the analysis and applicability of this specific policy violation to the FTCA claims are illustrated in detail in the Complaint and amended complaint.  (doc. 1, ¶¶ 410, 509-514, see doc. 19, ¶¶ 420-424, 104-105).

a. <u>**Regulation and Policy Violations by Defendant United States Render the Discretionary Function Exception Inapplicable**</u>

The relevancy of the above-described DEA Policy and Attorney General Guidelines violations (numbered 1- 16) by Defendant (as it relates to the claims set forth in the Amended Complaint) is grounded in the defendant's decision to avoid obtaining prior approval from the state prosecutor to utilize Edward Quintana as a DEA Confidential Source as well as the defendant's decision to avoid the establishment of a reporting system to update the state prosecutor as to the results of the use of Edward Quintana as a DEA Confidential Source.

Specifically, the DEA Agent's Manual <u>commands</u> that agents are required to receive approval from the state prosecutor assigned to prosecute DEA Informant Quintana *prior* to establishment and activation of Edward Quintana as a DEA Confidential Source.  In particular, the language of the rule in the DEA Agent Manual, states, "[t]he following additional requirements *shall* apply to the DEA's development of the defendant/confidential source" – (1)

"The approval of the appropriate prosecutor (i.e., federal, state, or local) **will** be obtained *prior* to seeking cooperation of a defendant."  *See* DEA Agent Manual, Chapter 66, Confidential Sources at § 6612.1: General Policies, Section G(1). [italics added]; *see* also exhibit 3.

However, Defendant did <u>not</u> obtain approval from the state prosecutor at the Second Judicial District Attorney's office, to establish and use Edward Quintana as a DEA Defendant Confidential Source.  (see Exhibit 2; doc. 19, ¶¶ 84-85, 382-385).[23]  It is also important to note that DEA Informant Quintana was registered as an active DEA Informant from on or about October 11, 2011 through April 4, 2013 (approximately 1 ½ years) and Defendant did <u>not</u> notify the state prosecutor of  Edward Quintana's cooperation as a Defendant DEA Informant until mid-October 2012 – approximately 365 days after the establishment and activation of Edward Quintana as DEA Defendant Confidential Source.  (see Exhibit 2; doc. 19, ¶ 394)[24]

As noted above, the words "shall" and "will" are expressions of command.  Therefore, defendant's decision to avoid obtaining prior approval from the state prosecutor to utilize Edward Quintana as a DEA Confidential Source was <u>not</u> discretionary.  Rather, defendant's decision was in clear breach of DEA Policy that commands agents to obtain approval from the prosecutor to utilize an individual as a DEA Defendant Confidential Source.

It is important to understand the purpose of prosecutor approvals regarding establishment and use of individuals as DEA <u>Defendant</u> Confidential Sources.  Unquestionably, the prosecutor

---

[23] Furthermore, the news article prepared by KRQE.com titled "Sources:  ABQ murder suspect was DEA snitch" dated February, 21, 2014 (updated on May 22, 2014) regarding Edward Quintana indicates that <u>multiple sources</u> advised KRQE News "at the time, agents did not get approval from either a judge or prosecutors to add him to the snitch roles" – signifying that a source or multiple sources within the District Attorney's Office confirmed that the United States did not obtain prior approval from the District Attorney's office to utilize Edward Quintana as a Defendant DEA Informant. (doc. 1, n.41).

[24] In essence, the State Prosecutor was unaware of the status of Edward Quintana as a Defendant DEA Informant (based on State of New Mexico charges under the control of the State Prosecutor) from the date of the arrest of Edward Quintana on September 20, 2011 to on or about October 12, 2012.

(whether State or Federal) is the appropriate official that is best suited to determine the viability of the establishment and use of an individual as a Defendant informant in the sense of evaluating and balancing various factors.  Indeed, the individual has agreed to cooperate to provide information and service to DEA as a Defendant Confidential Informant in exchange for benefit of a reduced sentence or penalty, the dismissal of charges, or the assurance that charges will not be filed against the individual.  Patently, the prosecutor possesses the "*sole authority* to decide whether or not to prosecute a case against a Defendant/Confidential Source."  (*See* Policy Violation #5 above).

Accordingly, the Prosecutor weighs and balances various critical factors relative to the decision to authorize establishment and use of an individual as a DEA <u>Defendant</u> Confidential Source, such as (but not limited to):

- Propensity of danger posed by the proposed Informant and history of violence of the Informant to include additional information known to the Prosecutor or contained in internal databases within the Prosecutor's office
- The seriousness of the crime(s) for which the proposed Informant is cooperating to receive benefit of prosecutorial consideration as well as the detailed criminal history of the proposed Informant
- Prevention of harms posed by the Informant to the local community and the greater public
- Prevention of harms posed by the Informant to identifiable groups of persons
- Safety of the Informant
- Credibility of the Informant's information and abilities as well as reliability of the Informant to abide by conditions established as the basis for cooperation (e.g. availability of Informant, adherence to procedures of evidence and testimony, etc.)
- Compliance with laws and regulations as well as internal policies of the Prosecutor's office regarding defendants and Informants
- Compliance with the presiding court directives, orders, and policies as well as other external controls (e.g., Pre-Trial Services, Bond Requirements, Probation Offices for probation violations)
- The involvement of the Informant (if any) in other previous, ongoing, or planned investigations as a target, conspirator, or future defendant (all of which may be unknown to DEA Officials).

Clearly, based on the above factors, the importance of placing, with the prosecutor, the sole authority concerning the decision to allow or deny the use of an individual as a DEA <u>Defendant</u> confidential source was recognized long ago by the high ranking administrators during the formulation of DEA Policy.  Indeed, "[t]he volumes of rules and regulations developed by federal and local law enforcement agencies governing the control of informants dramatically illustrates official recognition of the risks informants pose to agents and the public."[25]  As such, the DEA policymakers established rules (prohibiting discretion) that command DEA agents and officials to obtain approval from the prosecutor *prior* to establishment and use of an individual as a DEA <u>defendant</u> confidential source, and to set up a frequent reporting system to inform the prosecutor of the results of the use of the Informant.[26]

Notably, "[a]fter 40 years in our justice system . . . the greatest threat to the integrity of our justice process and to its truth seeking mission – indeed, even to prosecutors themselves – comes from informers poorly chosen for their roles, and then carelessly managed and handled." *See Informants, Cooperating Witnesses, and Undercover Investigations:  A Practical Guide to Law, Policy, and Procedure*, Second edition, Dennis G. Fitzgerald, CRC Press, 2015,P. xxix,

---

[25] *Informants, Cooperating Witnesses, and Undercover Investigations:  A Practical Guide to Law, Policy, and Procedure*.  Second Edition, Dennis G. Fitzgerald (CRC Press, 2015), Page 445.

[26] Plainly, the prosecutor (Federal or State) may deny or authorize the use of an individual to cooperate as a DEA Defendant Confidential Source.  In the event the Prosecutor <u>denies</u> use of an individual as DEA Defendant Confidential Source, DEA Policy then prohibits establishment and use of the individual as a DEA Confidential Source.  In the event the Prosecutor approves the use of an individual as an Informant, the Prosecutor then establishes conditions as to the restrictions, prohibitions, and range of liberties regarding the use of the Informant as well as reporting requirements (to the Prosecutor) "of the nature and scope of the defendant's cooperation throughout the period of his use."  *See* Policy Violation #4 above.  Notably, the purpose of the reporting requirements is to allow the prosecutor to determine the viability of the continued use of the Informant as well as to gauge whether or not the Informant presently posed a danger to the community or a defined group of persons – at which time, the Prosecutor may terminate the use of the cooperation of the Informant and DEA would be prohibited from continued use of the individual as an Informant.

(*quoting* Senior Federal Circuit Judge Stephen S. Trott, United States Court of Appeals for the Ninth Circuit).

It is also important to note that crucial nature of the management, supervision, and control of DEA informants is recognized in the Integrity Assurance Notes of Drug Enforcement Administration, Planning and Inspection Division, Vol. 1, No. 1, the Office of Professional Responsibility (OPR) which concluded that failure in management of Cooperating Individuals (Confidential Informants) constitutes the most obvious single cause of serious integrity problems in DEA and "many, if not most, such integrity problems could not have occurred without some lapse in supervisory or management oversight procedures."[27]  The study concluded that "in order to remedy these shortcomings, strong, consistent management *needs to enforce all current requirements contained in the DEA Manual*" [italics added].[28]

Overall, the primary basis of DEA Policy regarding prior approval of prosecutors is to create a safety mechanism to assess and to prevent the use of Defendant Confidential Informants that pose a high risk of danger to the community or identifiable groups of persons.  Moreover, DEA Policy regarding establishment and use of Defendant Confidential Informants was formed with the purpose of creating a succession of safety mechanisms to control the actions of DEA employees in a manner that requires a series of independent checks and approvals of Defendant Confidential Informants *by DEA Supervisors* as well as prosecutors (and other required external

---

[27] *Informants and Undercover Investigations:  A Practical Guide to Law, Policy, and Procedure*, Dennis G. Fitzgerald (CRC Press 2007), Page 233 (quoting from Integrity Assurance Notes, Drug Enforcement Administration, Planning and Inspection Division, Vol. 1, No. 1 (August 1991))

[28] *Informants, Cooperating Witnesses, and Undercover Investigations:  A Practical Guide to Law, Policy, and Procedure,* Second Edition, Dennis G. Fitzgerald (CRC Press, 2015),   Page 446.

sources).  These are acquired in order to protect, *inter alia,* the public (or identifiable groups) from harms associated with violent and dangerous individuals seeking to cooperate with DEA.[29]

However, Defendant, here, did not implement the internal safety mechanisms (as required by DEA Policy) to ensure that the approval of the state prosecutor had been obtained by DEA agents.  Therefore, Defendant breached DEA Policy regarding management review through the decision to not obtain prior approval from the lead state prosecutor regarding use of Edward Quintana as a DEA Informant.  *See* Policy Violations #2 and #3 above.

Unquestionably, Edward Quintana provided cooperation as a DEA Defendant Confidential Source based on consideration of the benefit of a reduction in sentence or the dismissal of State of New Mexico charges.  However, Defendant did not obtain approval from the state prosecutor (or notify the state prosecutor) of the establishment and use of Edward Quintana as a DEA Informant - based on the State of New Mexico charges.  As a result, Defendant utilized the cooperation of Defendant DEA Informant Quintana (without approval or knowledge of the lead State Prosecutor) based on the unauthorized agreement between Defendant DEA Informant Quintana and Defendant that the State of New Mexico charges would be reduced or dismissed against Defendant DEA Informant Quintana – rather than an appropriate agreement between the lead state prosecutor and Defendant DEA Informant Quintana.  In essence, DEA Informant Quintana "expect[ed] *compensation for his assistance in either the form of judicial or prosecutive consideration"* as prescribed in the DEA Policy Manual (§6612 –

---

[29] It is also important to note that the approval of a Prosecutor must be obtained by DEA prior to seeking cooperation with a Defendant or Arrestee based simply on the fact that law enforcement is not in a position to provide or otherwise guarantee benefits to the Defendant or Arrestee in the form of a reduced charge or sentence or dismissal of charges in exchange for the cooperation.  More importantly, the Prosecutor must establish a coherent and clear agreement between the Defendant or Arrestee regarding the benefits of cooperation in order to avoid any Due Process issues relative to others against whom the Defendant or Arrestee may testify or provide evidence which results in subsequent charges or convictions.  See *United States v. Dailey*, 759 F 2d 192 (1st Cir. 1985).

Confidential Sources, 6612.1 General Policies that defines the title "Defendant Confidential

Source") (exhibit 3).

Consequently, defendant's failure to obtain prior approval from the state prosecutor,

coupled with the use of the cooperation of Edward Quintana as a DEA Defendant Confidential

Source, in exchange for dismissal of state of New Mexico charges or a reduction in sentence,

without prosecutor approval, breached DEA Policy.  *See* DEA Policy Manual, § 6612.1, General

Policies (G)(2)("The Prosecuting Attorney shall have *sole authority* to decide whether or not to

prosecute a case against a Defendant/Confidential Source."); (see also exhibit 3).  In this

instance, Defendant represented falsely to DEA Informant Quintana that the authority to reduce

or dismiss the subject State of New Mexico charges rested with the United States rather than the

State of New Mexico.[30]

As a result of defendant's decision to not obtain prior approval (and direction), from the

state prosecutor, to establish and utilize Edward Quintana as a DEA Defendant Confidential

Source, Defendant thwarted the State of New Mexico prosecution of Edward Quintana and

sponsored the freedom of DEA Informant Quintana.[31]  Consequently, Defendant assumed a duty

---

[30] It is important to note that Chapter II, Section A(1) (Registering a Confidential Informant – Suitability Determination) of the Attorney General Guidelines requires "Prior to utilizing a person as a Confidential Informant, a case agent of a Department of Justice Law Enforcement Agency (DEA) shall complete and sign a written Initial Suitability Report and Recommendation" and "the case agent *must* address the following factors" (Total of 17 separate factors (g):  The person's motivation in providing information or assistance, including any consideration sought from the government for this assistance."  In this instance, the motivation of Defendant DEA Informant Edward Quintana was based solely on consideration for a reduced sentence or dismissal of the State of New Mexico charges against Edward Quintana and prevented the emboldening of Edward Quintana to commit crimes.  However, the United States did not possess the authority to reduce or dismiss the State of New Mexico charges against DEA Informant Quintana.

[31] In this instance, the state prosecutor was not provided the opportunity to deny the use of Edward Quintana as a DEA Confidential Source.  A denial of the use of Edward Quintana as an Informant would have maintained the State of New Mexico charges against Edward Quintana and prevented the emboldening of Edward Quintana to commit crimes.  Additionally, the State Prosecutor was not provided the opportunity to set conditions (restrictions, prohibitions, and liberties) for the use of Edward Quintana as a DEA Defendant Confidential Source.  Therefore, Defendant thwarted the prosecution and sponsored the freedom of Edward Quintana.

(undertaking of duty of care) to control DEA Informant Quintana and protect others from the foreseeable danger of harms posed by DEA Informant Quintana.[32] (*see* doc. 19, ¶¶ 126, 336, 356, 359; doc. 51, pp. 13-29); *see also McIntyre v. United States*, 447 F. Supp. 2d 54 (D. Mass. 2006) (duty to protect murder victim from Informants working for FBI for purposes of wrongful death claim under FTCA since agents and officials had special relationship with Informants sufficient to create such a duty); *Estate of Debra Davis v. United States,* 340 F.Supp.2d 79 (D. Mass. 2004)(special relationship with Informants within meaning of tort law creating duty to *control* Informants and thwarting prosecution and sponsoring freedom of Informants is non-discretionary); *Indian Towing v. United States*, 350 U.S. 61, 76 S. Ct. 122 (1955)(duty of care for undertaking by the United States); *Loge v. United States*, 662 F.2d 1268 (8th Cir. 1981)(negligent performance of undertaking was applicable under the FTCA). [33]

Finally, the remaining DEA Policy and Attorney General Guidelines breaches by Defendant (Policy Violations #7 - #16) relate to violations of regulation and policy regarding risk assessment and suitability of DEA Informant Quintana, Supervision of DEA Informant Quintana, the Attorney General Guidelines regarding duty of candor (by DEA employees), and the DEA Standards of Conduct (by DEA employees) – all of which are illustrated in detail in the in the paragraphs of original Complaint depicted in the policy violations above.

---

[32] As noted in the Amended Complaint and other pleadings, Defendant had established a "Special Relationship" with DEA Informant Quintana, and under New Mexico State Law, Defendant assumed a Duty of Care to prevent foreseeable harms to others by DEA Informant Quintana.  See *Estate of Debra Davis v. United States,* 340 F.Supp.2d 79 (D. Mass. 2004) (special relationship with Informants within meaning of tort law creating duty to *control* Informants); *see* doc. 19, ¶¶ 433, 349, 354-56, 358, 433, 444, 450; *see also* doc. 51, pp. 9-21.

[33] *See also Karbel v. Francis*, 1985-NMCA-030 468, 709 P.2d 190 (Ct. App. 1985)(The common law also provides the source of duty in such a situation based on actual control – The duty of one who takes charge of a third person whom he knows or should know to be likely to cause harm to others, if not controlled, is the duty to exercise reasonable care to prevent the person from doing harm); *Metropolitan Coal Co. v. Johnson*, 265 F.2d 173, 180 (1st Cir. 1959) (where the original negligence of the defendant is followed by the independent act of a third party which directly results in injury to the plaintiff, the defendant's earlier negligence may be found to be the proximate cause of the injury); *Lopez v. Maez; F & T Co. v. Woods*, 92 N.M. 697, 594 P.2d 745 (1979)."

Interestingly, Defendant notes the torts were "committed months after the employee[34] had last performed any work for the employer or even communicated with employer." (doc. 59, p. 12) In this instance, Defendant acknowledges Defendant did not supervise or maintain contact with DEA Informant Quintana for a period of "months" – providing further evidence of Defendant's failure to supervise DEA Informant Quintana as well as the negligent breach of the common law duty to use reasonable care to prevent foreseeable harms to third parties.

Notably, Courts have rejected efforts by the United States to dissect the arguments of the plaintiff into isolated events in an effort to apply the discretionary function exception to the claims under the FTCA. *Estate of Debra Davis v. United States,* 340 F.Supp.2d 79 (D. Mass. 2004). Rather, the Courts look to the nature of the conduct of the United States as a whole to determine that the Government breached a variety of duties and regulations. In the *Estate of Debra Davis,* the Court examined the United States' conduct as a whole in deciding the discretionary function exception did not apply to bar subject matter jurisdiction under the FTCA. *Id.*

In this case, based on Defendant's numerous and various breaches of the <u>non-discretionary</u> requirements of DEA Policy and the Attorney General Guidelines, concerning the establishment, use, and supervision of DEA Defendant Confidential Informant Edward Quintana, the first prong of the *Berkovitz* test is not satisfied (fails) and application of the second prong of the *Berkovitz* test is not necessary. *Elder v. United States*, 312 F.3d 1172 (10th Cir. 2002). As a result, the discretionary function exception does <u>not</u> apply to the Causes of Action under the FTCA based on negligence of Defendant that proximately caused the wrongful death of

---

[34] Defendant writes that plaintiffs' suggest the circumstances here might be analogous to an employee/employer relationship. (see doc. 59, p. 12) However, Plaintiffs have never suggested Quintana's relationship with defendant was akin to that of an employer/employee. (doc. 19, ¶426) Rather, Quintana and defendant formed a special relationship. (doc. 19, ¶¶ 345,354; doc. 51, pp. 14-20).

Decedent Jason Estrada and the personal injuries to the Plaintiffs - as set forth in the Amended

Complaint.  Therefore, the Court has subject matter jurisdiction.

**b.  Due Care Clause Does not Apply in this Case**

In the event the Court determines that particular language of the above-described DEA

Policy and the Attorney General Guidelines involve discretion on the part of Defendant, the

Court then applies the requirements of the due care clause to the actions of Defendant to

determine whether or not Defendant exercised due care in implementing the procedures and rules

set forth in DEA Policy and Attorney General Guidelines concerning the establishment, use, and

supervision of DEA Informant Quintana.  *See Crumpton v. Stone*, 59 F.3d 1400, 1403 (D.C.C.

1995).

Patently, defendant's actions regarding implementation of DEA Policy and the Attorney

General Guidelines were demonstrably implemented and exercised without due care concerning

the establishment, use, and supervision of DEA Informant Quintana – as illustrated herein and

other pleadings.  (doc. 51)  Indeed, the numerous intentional breaches of DEA Policy and

Attorney General Guidelines by Defendant were conducted in a willful manner and in complete

disregard for the intent of the formulation of DEA Policy and Attorney General Guidelines –

*inter alia*, to prevent harms to others by DEA Informants.  As a result, the due care clause of the

first prong of the *Berkovitz* test is not met and application of the second prong of the *Berkovitz*

test is not necessary.  *See Cope v. Scott*, 45 F.3d 445, 448-49 (D.C.Cir. 1995).  Consequently, the

discretionary function exception does not apply to the Causes of Action under the FTCA based

on negligence of Defendant that proximately caused the wrongful death of Decedent Jason

Estrada and the personal injuries to the Plaintiffs.  Therefore, this Court has subject matter

jurisdiction.

**2.**   **Second Prong of the *Berkovits* Test is Not Met in this Case**

However, if the Court were to determine that particular language of the above-described DEA Policy and the Attorney General Guidelines involve discretion on the part of Defendant <u>and</u> Defendant exercised due care in implementing the procedures and rules set forth in DEA Policy and Attorney General Guidelines concerning the establishment, use, and supervision of DEA Informant Quintana, the Court then applies the requirements of the second prong of the *Berkovitz* test.  Specifically, the focus of the Court is "not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis."  *See* 499 U.S. at 325.  As noted in *Myers v. United States*, 652 F.3d 1021 (9th Cir. 2011), in order for the discretionary function exception of the FTCA to apply, the government cannot merely show that some choice was involved in decision-making process.  Rather, the Court's inquiry looks at the nature of the conduct and the Court must examine the balance of policy considerations as necessary prerequisites.

Accordingly, the nature of defendant's conduct is demonstrably willful in the disregard to abide by rules and procedures established in the Attorney General Guidelines, DEA Policy, and New Mexico State law regarding the establishment and use of DEA Informant Quintana.  Additionally, in the related Civil Case against Defendant that involved the *same* DEA Agents and Supervisors, the nature of defendant's conduct is also demonstrably willful in the disregard to abide by rules and procedures established in the Attorney General Guidelines and DEA Policy.  *See Romero v. United States et.al.*, 14 CV 640 MV/WPL, doc. 23, ¶¶ 99-100, 102, 118, 247, 249-250.

Overall, the nature of defendant's conduct is clearly in conflict with the intent of regulation, policy, and New Mexico State law (*see* violations #15 and #16 above for violation of

New Mexico State law).  Indeed, Congress did not intend for federal employees to breach and disobey statutes, regulations, and policies in exercising duties, tasks, and behavior.  Rather, Congress established directives to formulate regulations and policies to control and manage the duties, tasks, and behavior of federal employees.  As such, the nature of defendant's conduct regarding the establishment, use, and supervision of DEA Informant Quintana cannot be deemed a matter of policy consideration – particularly in light of the fact that defendant's actions were required to be controlled by *previously formulated* rules in the form of the Attorney General Guidelines and DEA Policy.

Furthermore, defendant's decisions cannot be considered matters of formulation of regulation or policy, or intended to guide the conduct or actions of other federal employees in similar settings and circumstances.  For example, in *Liuzzo v. United States*, 508 F. Supp. 923 (E.D. Mich. 1981), the Court determined that the agent of the Federal Government was operating under FBI Policy concerning the recruitment and supervision of informants.  Most notably, the Court noted that the agent "was not formulating policy when making this decision, and his actions were not meant to guide the actions of other government officials faced with similar situations."  *Id.* at 932; *see also Downs v. United States*, 522 F.2d 990 (6th Cir. 1975)(FBI agent was not making policy during decision process and therefore, claims were not barred by the discretionary function exception).  Therefore, the decision of the FBI (operating under the FBI Policy) was "not of the nature and quality which Congress intended to put beyond judicial review."  508 F.Supp. 923 at 932.

Finally, defendant's decisions (in the form of low level law enforcement agents and supervisors) are not shielded under the second prong of the *Berkovitz* test to determine the applicability of the discretionary function exception under the FTCA.  More specifically, the

decisions of individual law enforcement officials enjoy a certain amount of discretion <u>but</u> the decisions "do not involve the sort of generalized social, economic and political policy choices that Congress intended to exempt from tort liability." *See Garcia v. United States*, 826 F.2d 806, 809 (9th Cir. 1987)(*citing Caban v. United States*, 671 F.2d 1230 (2d Cir.1982)).  In other words, the decisions and actions of *<u>individual</u>* federal law enforcement officials do not involve matters of social, economic, and political policy.  Consequently, defendant's decisions (in the form of individual law enforcement officials) regarding establishment, use, and supervision of DEA Informant Quintana did not involve matters of social, economic, and political policy.  Therefore, defendant's decisions are <u>not</u> "susceptible to policy analysis*." See* 499 U.S. at 325.

Overall, the following decisions by defendant do not involve matters of social, economic and political policy: 1) decision to <u>not</u> obtain prosecutor approval to use Edward Quintana as a DEA Defendant Confidential Source and establish a reporting system with the prosecutor regarding the nature and scope of the use of DEA Informant Quintana; 2) decision to <u>not</u> conduct a risk assessment and suitability determination of DEA Informant Quintana; 3) decision to <u>not</u> abide by DEA Standards of Conduct; and 4) decision to <u>not</u> abide by the duty of candor commanded by the Attorney General Guidelines.  Additionally, Defendant's decisions (in the form of individual law enforcement officials) regarding establishment, use, and supervision of DEA Informant Quintana did not involve matters of social, economic, and political policy.  Consequently, all of defendant's decisions (together or separately) are <u>not</u> subject to policy analysis.  And thus, the second prong of the *Berkovitz* test is not satisfied (fails).  As a result, the discretionary function exception does <u>not</u> apply to the Causes of Action under the FTCA - as set forth in the Amended Complaint.

In conclusion, Defendant (bearing the burden of proof on the applicability of the discretionary function exception) failed to demonstrate in their motion to dismiss for lack of subject matter jurisdiction (doc. 59) that the discretionary function exception applies to the claims set forth in the Amended Complaint. *Green v. United States*, 630 F.3d 1245 (9th Cir. 2011). Specifically, Defendant failed to establish that the first prong (to include the due care clause) and second prong (individually or together with the first prong) of the *Berkovitz* test is applicable to the claims in order to satisfy the discretionary function exception to the FTCA.

Conversely, Plaintiffs have established material issues of fact regarding the <u>inapplicability</u> of the discretionary function exception to the Claims set forth in the Amended Complaint. *Id.* Consequently, the discretionary function exception does <u>not</u> apply to the Causes of Action under the FTCA based on negligence of Defendant that proximately caused the wrongful death of Decedent Jason Estrada and the personal injuries to the Plaintiffs. Therefore, the Court has subject matter jurisdiction.

## III.   <u>PRIVATE PERSON LIABILITY (SUBJECT MATTER JURISDICTION)</u>

Notably, the United States Supreme Court has rejected the Federal Government's contention that the FTCA imposes liability on the United States only under circumstances in which governmental bodies have traditionally been responsible for the negligence and misconduct of federal employees. See *United States v. Olson*, 546 U.S. 43, 126 S. Ct. 510 (205); *Rayonier, Inc. v. United States*, 352 U.S. 315, 77 S. Ct. 374 (1957); *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S. Ct. 122 (1955). Under the FTCA, liability is imposed upon the United States "under circumstances where the United States, if a private person, would be liable to the Plaintiff in accordance with the law of the place where the act or omission occurred," and pursuant to 28 USC § 2674, the liability of the United States Government is "in the same manner

and to the same extent as a private individual under **like circumstances**."  *See Richards v. United States,* 369 U.S. 1, 6, 82 S. Ct. 585 (1962).

Beginning with the reasoning in *United States v. Varig Airlines*, 467 U.S. 797, 104 S.Ct. 2755 (1984), Courts often consider the merits of the discretionary function exception to the FTCA rather than the private person analog approach in order to ascertain subject matter jurisdiction.  Nonetheless, in order to establish subject matter jurisdiction under the FTCA regarding private person liability, the Court determines "the place" in which the act or omission occurred.  In the Amended Complaint, "the law of the place" has been established properly as the State of New Mexico.  (doc. 19, ¶¶ 25-26).  Next, the Court determines whether or not the causes of action in a complaint are recognized in the "law of the place."  Plaintiffs have established that negligence is a tortious act recognized in the State of New Mexico as a private person liability. (doc. 51, pp. 8-11).  Lastly, the Court determines whether or not a "private person analog" under **like circumstances** exists under the law of the place in which the acts or omissions occurred.

A.  <u>**There are Private Person Analogs Under State of New Mexico Law**</u>

In conducting the private person analog inquiry, the Court is not restricted to search for identical (or the same) private counterpart activities that the particular federal agency or employees perform as a matter of duties, functions, and/or activities.  *See Indian Towing v. United States*, 350 U.S. 61, 64-65, 76 S. Ct. 122 (1955).[35]  Indeed, the Supreme Court held that courts are "required to look further afield" to examine similar private person activities, duties, or functions in order to determine "like circumstances."  *See United States v. Olson*, 546 U.S. 43,

---

[35] *See also Turner Ex rel. Turner v. United States*, 514 F.3d 1194 (11th Cir. 2008)(like circumstances requirement is not as strict as identical or same circumstances test); *Pate v. Oakwood Mobile Homes, Inc*., 374 F.3d 1081 (BNA) 1878 (11th Cir. 2004)(United States may not escape liability under the FTCA for its negligence in performing uniquely functions, simply because there is no identical private activity for which state law imposes private liability on private parties; comparison of activities need not be exact, and court may look to the closest state law analogue to decide whether state law recognizes any comparable private liability).

47, 126 S. Ct. 510 (2005).  In *Olson*, the analogy of Federal Mine Inspectors of the Mine Safety

and Health Administration (MSHA) was equated to private persons that conduct safety

inspections such as Cattle Inspectors, Airplane Inspectors, and Automobile Title Inspectors.  *Id.*

In essence, the Supreme Court has concluded that courts should "properly apply the logic of

*Indian Towing*" in which private individuals may create a relationship with third parties that is

similar to the relationship between a Government employee and a third party.  *Id.*

       In Plaintiffs' claims, the private person analogy is well rooted under the law of the State

of New Mexico.  Generally, the duties, activities, and functions of Federal Law Enforcement

officials involve *inter alia,* investigations of individuals and businesses concerning a wide array

of criminal and civil matters, providing security to individuals, physical locations, and

technological systems (cyber security), enforcement of regulations that govern persons and

businesses, and other police activities.  As it relates to investigations specifically, federal law

enforcement officials engage in (but not limited to) criminal and civil investigations, surveillance

operations, witness interviews, establishment and use of informants (and sources of information),

service of subpoenas (process service), undercover operations, arrests, carrying firearms,

gathering and preparing evidence for judicial matters, testimony, and employment of other

investigative technique and duties.  (*See* exhibit  8)

       Comparably, the law enforcement activities, duties and functions of federal law

enforcement agents are closely analogous to the activities, duties and functions of Private Law

Enforcement Practitioners in New Mexico.[36]  In particular, the Private Investigations Act

(N.M.SA. §§61-27B-1 – 61-27B-36 (1978)) outlines the definitions, scope, statutory authority,

---

[36] *See* exhibit 8 (Declaration of retired ATF Special Agent Gary Ainsworth (and current licensed Private Law
Enforcement Practitioner in the State of New Mexico) regarding the identical and similar duties, functions, and
activities between Federal law enforcement and private investigators in New Mexico).

liability requirements, qualifications of private investigators, private patrolman, private security

guards, and other professionals governed by the Act, Licensing Mandates, and Reciprocity with

other States.  Furthermore, the conduct, duties, ethical standards, licensing, and liability of these

private law enforcement professionals are governed by the New Mexico Administrative Code

(NMAC), Title 16, Chapter 48.

As a comparative example to general federal law enforcement <u>activities</u> and <u>functions</u>,

NMSA §61-27B-2 Definitions (L)(M)(S)(As used in the Private Investigations Act) defines the

following regarding private law enforcement practitioners:

L. "private investigation company" means a legal business entity that provides private investigation services, the location of which may be within or outside of the state, provided that the private investigation services are performed within New Mexico;

M. "private investigator" means an individual who is licensed by the department to engage in business or who accepts employment to conduct an investigation pursuant to the Private Investigations Act to obtain information regarding:

(1) crime or wrongs done or threatened against the United States or any state or territory of the United States;
(2) a person;
(3) the location, disposition or recovery of lost or stolen property;
(4) the cause or responsibility for fires, losses, accidents or damage or injury to persons or properties;
(5) the securing of evidence to be used before a court, administrative tribunal, board or investigating committee or for a law enforcement officer; or
(6) the scene of a motor vehicle accident or evidence related to a motor vehicle accident;

S. "private patrol operator" means an individual who is licensed by the department to:

(1) conduct uniformed or non-uniformed services as a watchman, security guard or patrolman to protect property and persons on or in the property;
(2) prevent the theft, unlawful taking, loss, embezzlement, misappropriation or concealment of goods, wares, merchandise, money, bonds, stocks, notes, documents, papers or property of any kind; or
(3) perform the services required of a security guard or security dog handler or provide security services for an armored car company;

In a comparative example to general <u>liability</u> of federal law enforcement conduct, NMSA §61-27B-23 (D)(E) sets forth the following regarding Private Law Enforcement Practitioners: [37]

> D.  A private investigation company is liable for the conduct of the company's employees, including the conduct of its private investigations manager.
> E.  A Private Patrol Company is liable for the conduct of the company's employees, including the conduct of its private patrol operations manager.

In a comparative example of <u>restrictions</u> to federal law enforcement functions and activities, NMSA §61-27B-25 (A)(B)(C) mandates the following for Private Law Enforcement Practitioners:

> A.  A licensee or registrant may divulge to a law enforcement officer or district attorney, the attorney general or the attorney general's representatives information the licensee or registrant acquires concerning a criminal offense but the licensee or registrant shall not divulge to any other person, except as the licensee or registrant is required by law.
> B.  No licensee or registrant shall knowingly make a false report to the licensee's or registrant's employer or the client for whom the information was obtained.
> C.  No written report shall be submitted to a client except by the licensee, or a person authorized by the licensee, and the person submitting the report shall exercise diligence in ascertaining whether the facts and information are true and accurate.

NMSA § 61-27B-25(A)(B)(C).

In a comparative example of training and <u>authority to carry firearms</u> to federal law enforcement authority, §61-27B-31, decrees the following for Private Law Enforcement Practitioners: [38]

---

[37] *See also* NMAC Chapter 16 §16.48.2.8 (A)(B) regarding requirement of a minimum Surety Bond of $10,000.00 and General Liability Certificate of Insurance of no less than 1 Million Dollars ($1,000,000.00) for all Private Investigation, Private Security, and Private Patrol companies and employees - under the provisions of the Private Investigations Act.

[38] *See also* NMAC §16.48.2.17 D, regarding <u>training</u> of particular Private Law Enforcement Practitioners which includes:  Introduction to use of force continuum; Appropriate use of force and de-escalation techniques; Powers of detention and New Mexico laws of citizen arrest; Appropriate search and seizure; Legal restrictions and civil liability; New Mexico laws on trespass; Communication with local law enforcement, jurisdiction and limitations of authority; Image, professional communication, note-taking and report writing; Identifying evidence; Care and handling of evidence; Securing the immediate area; Evidence tampering and/or removal; and Witness/participant identification.

> A private investigator, a private patrol operator, a private investigations employee, a level three security guard or a private patrol operations employee may carry a firearm upon successful completion of the mandatory firearm training required by rules of the department.

NMSA § 61-27B-31.

As it relates to the general duties of private investigators, the United States Department of Labor, Bureau of Labor Statistics (www.bls.gov/Protective Services/Private Detectives and Investigators: "What they do") provides a general description of the functions and activities of private investigators as the following:

- Interview people to gather information
- Search records to uncover clues
- Conduct surveillance
- Collect evidence to present in Court
- Verify employment, income, and other facts about a person
- Investigate computer crimes and information theft

Moreover, the Department of Labor writes, "[d]etectives and investigators must be mindful of the law when conducting investigations" and "[b]ecause they lack police powers, their work must be done with the *same authority as a private citizen*" [italics added]. *See id*. Finally, the Department of Labor presents examples of private detectives and investigators as Legal Investigators, Computer Forensic Investigators, Corporate Investigators, and Financial Investigators.[39]

---

[39] It is also important to note, the Department of Labor lists "occupations with job duties that are similar to those of private detectives and investigators" as "**Police and Detectives**, Accountants and Auditors, Bill and Account Collectors, Claims Adjusters, Appraisers, Examiners and Investigators, Financial Analysts, Personal Financial Advisors, Security Guards and Gaming Surveillance Officers." See www.bls.gov/Protective Services/Private Detectives and Investigators:  Similar Occupations.  In New Mexico, the activities, duties, and functions of (private) Accountants (which include Forensic Accountants) are governed by the Public Accountancy Act, NMSA §§ 61-28B-1 to 61-28B-29 (1978).

Furthermore, the Practical Handbook for Private Investigators illustrates the general duties, functions, and activities of Private Investigators that include (but not limited to) the following: [40]

- Drug Investigations of the transportation, purchase, and sale of illegal drugs using business and employment channels
- Establishment and use of Informants and sources of information
- Criminal, Fraud, Insurance, Arson, Background, Family, Corporate, Employment, Computer, Accident, and Domestic Investigations
- Interviewing, Interrogation, and Taking Statements
- Civil Investigations and Negligence Investigations
- Expert Witness Services
- Perform Citizen Arrests
- Undercover Operations
- Surveillance Operations
- Process Service
- Background Checks and Pubic Record Checks
- Security and Protective Services
- Homicide and Missing Persons Investigations
- Trademark and Patent Infringements
- Collection and Analysis of Evidence
- Examination of Records and Documents
- Testimony, Depositions, and Declarations

Finally, the liability of Private Law Enforcement Practitioners is recognized in New Mexico case law.  For example, the New Mexico Court of Appeals determined that "Private Security Guards" (acting in the course of their employment and occupation) employed by Thunder Corporation (a private company owned by Carl Francis) possessed a Duty of Reasonable Care to protect Third Parties from harms posed by another individual.  *Karbel v. Francis*, 103 N.M. 468, 471, 709 P.2d 190 (Ct.App. 16985).  As such, the Court determined that general negligence principles existed and therefore, the Court affirmed common law private person liability of Private Law Enforcement Practitioners in the State of New Mexico.

---

[40] "Practical Handbook for Private Investigators," McMahon, Rory J., CRC Press, 2001.

Overall, the duties, functions, and activities of federal law enforcement officials are nearly analogous to private law enforcement practitioners under the laws of the State of New Mexico.  Moreover, the general duties, functions, and activities of private investigators described by the Department of Labor (to include other occupations with similar job duties) and in private investigator reference and guide books are also nearly analogous to the duties, functions, and activities of Federal law enforcement officials.  As such, Plaintiffs have clearly demonstrated a private person analog between federal law enforcement officials and private law enforcement practitioners in the State of New Mexico.  Consequently, the private person analog <u>does exist</u> to support the Causes of Action under the FTCA based on Negligence of Defendant that proximately caused the Wrongful Death of Decedent Jason Estrada and the personal injuries to the Plaintiffs.  Therefore, the Court has subject matter jurisdiction.

In this case, the duties, functions and activities of defendant are analogous to private law enforcement practitioners under New Mexico state law.  Private law enforcement practitioners in New Mexico routinely conduct criminal investigations and establish and use informants.  *See Practical Handbook for Private Investigators*, McMahon, Rory J., CRC Press, 200.  Indeed, private law enforcement practitioners/ private security guards may also be liable for their negligence in the manner in which they exercise their duties, functions and activities as private security/private investigators/private law enforcement practitioners.  *See Karbel v. Francis*, 103 N.M. 468, 709 P.2d 190 (N.M.App. 1985).  This is particularly true when their negligence is followed by the acts of a third party which cause injury to the plaintiff.  *See id*. at 470.

Here, Plaintiffs set forth the negligence claim under the FTCA, in detail, in their response to Defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and incorporates those arguments and allegations herein by reference.  (doc. 51)  Specifically, "'[c]riminal acts of a third

47

person will not relieve a negligent defendant of liability if the defendant should have recognized that his or her actions were likely to lead to that criminal activity.'"  *See Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 21, 73 P.3d 181 (N.M. 2003)(*quoting Sarracino v. Martinez*, 117 N.M. 193, 195-96, 870 P.2d 155, 157-158 (Ct.App. 1994).

Contrary to defendant's contention, defendant had established a special relationship with Edward Quintana.  It was not an employee/employer relationship or an independent contractor relationship, as defendant tries to contend.  (doc. 59, p.12)  Informants are not independent contractors.  *Slagle v. United States*, 612 F.2d 1157, 1163 (9th Cir. 1980).  Defendant unquestionably established a special relationship with Quintana and therefore had a duty to protect plaintiffs.  (doc. 51, pp 12-21).  A special relationship arises out of particular connections between the parties which gives rise to special responsibilities.  *See Johnstone v. City of Albuquerque*, 2006-NMCA-119, ¶ 14, 140 N.M. 596, 145 P.3d 76.  Defendant United States' relationship with Edward Quintana was not just merely a non-custodial relationship between agents and Quintana.  Because Quintana was a confidential <u>Defendant</u> informant, doc. 19 at  ¶¶ 56, 76, DEA was required to actively supervise and control him.  *Id.*, at ¶¶ 80, 115, 117, 123, 336, 346, 352, 354-355, 416.

Defendant United States sponsored Quintana's freedom.  Indeed, DEA took over the state criminal case against him, without authorization from the lead state prosecutor, *id.* ¶¶ 72, 84, and thereafter failed to charge Quintana in federal court.  *Id.* ¶ 81, 92.  Instead, DEA released Quintana to operate as a Defendant Confidential Informant, thereby sponsoring his freedom, without restraints.  *Id.* at ¶¶ 91, 421-22, 424.  By defendant's own admission, Quintana was being monitored by DEA.  (doc. 19, ¶ 115).

Notably, where the original negligence of the defendant is followed by the independent act of a third party which directly results in injury to the plaintiff, the defendant's earlier negligence may be found to be the proximate cause of the injury. *Karbel v. Francis*, 103 N.M. 468, 470, 709 P.2d 190 (N.M.App. 1985); *Metropolitan Coal Co. v. Johnson*, 265 F.2d 173 (1st Cir. 1959). In an attempt to argue that Defendant did not create a danger in the form of Edward Quintana and thereby established a special relationship with him, defendant writes, "[w]hile Plaintiffs allege that DEA 'had the charges dismissed' against Quintana, that is factually impossible as a matter of law; only the state prosecutor has the discretion to dismiss charges" and "The Court thus cannot inquire into the reasoning behind the decision." (doc. 59, p. 12) However, the evidence conclusively shows Defendant requested the state prosecutor to dismiss the charges against Quintana (based on the cooperation of Quintana). (exhibit 2) Therefore, the Court can certainly inquire into the basis for the decision; particularly since Defendant did not obtain prior approval from the state prosecutor to establish and use Quintana as a Defendant Confidential Source based on those particular State of New Mexico charges.

Additionally, since defendant had a special relationship with Quintana, defendant had a duty to warn plaintiffs of Quintana's penchant for violence against household members. (doc. 51, pp. 11-31) On this point, Defendant argues that DEA Policy prohibits disclosure of the identity of individuals as informants to others for safety reasons. (doc. 59, p. 13) However, in this situation, Defendants had undertaken a duty to control Quintana (described in doc. 51, pp 21-26) and therefore, as part of the duty, Defendant was required to prevent harms to others by Quintana – which would include, *inter alia*, <u>warning</u> Plaintiffs of the dangerous propensities of Quintana. Most importantly, Defendant would not have had to reveal that Quintana was an Informant. Rather, Defendant (as expert undercover operatives) may have employed a simple

ruse or other technique to warn Plaintiffs in a manner that did not identify that Quintana was an Informant or the involvement of DEA in the warning process.  *Marin v. United States*, 814 F. Supp. 1468 (E.D. Wash. 1992) (Duty to Warn "was not precluded on theory that government needed to maintain secrecy of the informant's release from custody and his whereabouts").

## CONCLUSION

Defendant thwarted the prosecution and sponsored the freedom of Edward Quintana.[41] Therefore, Defendant created a duty under New Mexico state law to control Edward Quintana and prevent harms to others from Quintana's dangerous propensities.  Additionally, Defendant established a special relationship with Edward Quintana (as set forth in the pleadings). Defendant subsequently breached its duty of care through negligent supervision and control of DEA Defendant Informant Quintana.  Indeed, Defendant was clearly negligent in the performance of its duty and the lack of procedural compliance, accountability, and oversight of Defendant's actions is grossly reckless and in conscious disregard of danger to others.  Thus, Defendant is liable in the same manner as a private citizen such as a private law enforcement practitioner.  Finally, because Defendant violated mandatory nondiscretionary DEA policies and Attorney General Guidelines in the manner in which it established and managed DEA Informant Quintana, the discretionary function exception of the FTCA does not apply in this case.  Therefore, this Court has jurisdiction over this cause of action and defendant's motion to dismiss for lack of subject matter jurisdiction must be denied.

---

[41] Thwarting the prosecution and sponsoring the freedom are nondiscretionary actions by Defendant.  *Estate of Debra Davis, supra.*

Respectfully Submitted,


LAW OFFICE OF ERLINDA O. JOHNSON

By __electronically filed on 3/29/15_____
        Erlinda O. Johnson, Esq.
        1110 2nd Street, NW
        Albuquerque, New Mexico 87102
        Telephone:  505-792-4048
        Facsimile:  505-792-7268
        Email:  erlindajohnsonlaw@comcast.net
        Attorney for the Plaintiff


I hereby certify that a true and correct
Copy of the foregoing was e-mailed via
CM-ECF to Counsel for defendants:

Ruth Keegan and
Karen Grohman
U.S. Attorney's Office
201 Third Street N.W.
Suite 900
Albuquerque, NM 87102

on this 29th day of March, 2015.
_____/s/_____
Erlinda O. Johnson