IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MINOR JGE et al.,

       Plaintiffs,

v.                                                                             Civ. No. 14-710 MV/WPL

UNITED STATES OF AMERICA et al.,

       Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiffs JGE, Gabriela Gallegos, Jolene Estrada and Joyce Estrada's Motion to Alter or Amend the Court's Memorandum Opinion and Judgment as to Defendant United States, filed August 29, 2016 [Doc. 77]. On August 9, 2016, this Court dismissed all claims against the United States, finding that because the Complaint failed to state a claim of negligence under New Mexico law, Plaintiffs failed to state claims under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). [Doc. 75]. The Court, having considered the Motion, briefs, relevant law, and being otherwise fully informed, finds that Plaintiffs' Motion is not well-taken and will be **DENIED**.

### BACKGROUND

Plaintiffs' claims against the United States, brought under the Federal Tort Claims Act ("FTCA") 28 U.S.C. § 1346(b), arose out of the Drug Enforcement Agency's ("DEA") activation and use of Edward Quintana as an informant. The allegations in the First Amended Complaint ("FAC") supporting Plaintiffs' claims are set forth fully in the Court's Memorandum Opinion and Order dated August 9, 2016. [Doc. 75]. The Court incorporates those facts by reference herein. In summary, while employed as an informant but unrelated to his activities as

1

an informant, Quintana moved in with the Estrada family and shortly thereafter began sexually molesting the family's then five-year-old son, JGE. After Quintana moved out, JGE told his parents about the abuse, prompting JGE's father, Jason Estrada, to ask around the neighborhood for Quintana's whereabouts. Upon learning that Jason Estrada was telling people about the abuse, Quintana and two other males returned to the home on April 3, 2013, and, in the presence of young JGE, murdered Jason Estrada. Quintana was deactivated as an informant roughly the following day.

Plaintiffs sued both individually named DEA employees as well as the United States. Plaintiffs claimed in Counts I-XVII of the Complaint that because the DEA (1) failed to warn Plaintiffs that Quintana was a dangerous DEA informant, and (2) negligently supervised Quintana, the United States breached its duty to protect Plaintiffs from Quintana, who the DEA knew or should have known had violent tendencies. [Docs. 19 at 65-114; 77 at 1].

## I. The Court's August 9, 2016 Opinion

In its previous Memorandum Opinion and Order, this Court dismissed all claims against both the named Individual Defendants and the United States. [Doc. 75 at 21-37]. Plaintiffs' Rule 59(e) Motion only challenges the judgment in favor of the United States. [Doc. 77]. The Court's reasoning was guided by two fundamental principles governing FTCA claims. First, the FTCA does not create liability but merely provides that the tort law of the state where the conduct occurred applies to the United States. *See* Doc. 75 at 23 (citing 28 U.S.C. § 1346(b)(1); *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1117 (10th Cir. 2004)). Second, under the FTCA the United States is only liable to the same extent as private individuals in comparable circumstances. *Id*. at 24 (citing *Coffey v. United States*, 870 F. Supp. 2d 1202

(D.N.M. 2012). Accordingly, the Court examined negligence liability theories recognized under New Mexico law that might be analogous to the instant case.

Particularly relevant to the present Motion, this Court examined whether there was a special relationship between the DEA and Quintana giving rise to a duty to protect Plaintiffs. Pursuant to the above framework for stating a claim under the FTCA, the Court examined New Mexico case law regarding the duties that medical professionals (i.e. potentially analogous private persons) may have to protect against harmful conduct by their patients. The Court focused its analysis on Section 319 of the Restatement (Second) of Torts, which had been adopted by New Mexico courts for the rule that medical professionals can be liable for harms caused by patients with known dangerous propensities, if the doctor exerts control over the patient. *Id.* at 29 (citing *Brown v. Kellogg*, 340 P.3d 1274 (Ct. App. N.M. 2014), *inter alia*). The Court reasoned that because Quintana's record of criminal convictions did not indicate Quintana's dangerous propensities, and because the DEA did not exert control over Quintana's residence with the Estrada family, this theory for private person liability did not apply to the present case. *Id.* at 31-33. Medical professionals can also be liable under New Mexico law for being aware of specific threats to specific individuals and failing to disclose them to authorities or to the individual threatened. *Id.* at 30 (citing *Brown*). The Court found that this theory also did not apply to the present case, as the DEA was not and could not have been aware of any specific threat to the Estrada family. *Id.* at 31-32.

The Court also examined FTCA cases involving injuries inflicted by informants in other states, in which the federal district court looked to corresponding state law adopting Sections 315-319 of the Restatement, finding that the United States could be liable only where the harm inflicted by the informant was reasonably foreseeable. *Id.* at 30-31. Therefore, in light of the

absence of an analogous liability theory under New Mexico law, and in light of the holdings in other federal informant cases applying analogous state caselaw, this Court held that because the harm to Plaintiffs was unforeseeable, the DEA did not have a duty to warn or otherwise protect the Estrada family. *Id*. at 27-36.

## II. Plaintiffs' Motion to Alter or Amend the Court's Opinion

On August 29, 2016, Plaintiffs filed the present Motion to Alter or Amend the Court's Judgment under Rule 59(e) of the Federal Rules of Civil Procedure, [Doc. 77]. The United States submitted its response on September 15, 2016, [Doc. 78], and Plaintiffs replied on September 26, 2016, [Doc. 79].

Plaintiffs' opening brief argues, first, that the Court improperly considered materials outside the pleadings in adjudicating the United States' Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c). [Doc. 77 at 8].

Second, Plaintiffs' opening brief argues that the Court misapprehended New Mexico tort law and should have found that the United States owed a duty to warn Plaintiffs and protect Plaintiffs from harm through better supervision, because "foreseeability of a plaintiff alone does not end the inquiry" and the existence of a special relationship between the defendant and the tortfeasor gives rise to a duty towards all plaintiffs. [Doc. 77 at 10]. Plaintiffs cite New Mexico's adoption of the Restatement (Second) of Torts §§ 314A, 319. [Doc. 77 at 10 (citing *Ciup v. Chevron U.S.A., Inc.*, 928 P.2d 263, 265 (N.M. 1996) ("As a general rule, an individual has no duty to protect another from harm caused by the criminal acts of third persons unless the person has a special relationship with the other giving rise to a duty."); *Grover v. Stechel*, 45 P.3d 80, 84 (N.M. 2002) ("In order to create a duty based on a special relationship, the relationship must include the right or ability to control another's conduct."))]. Plaintiffs stated

4

that "[w]hile [they] agree that the Court must determine foreseeability as part of determining whether a duty to plaintiffs existed, plaintiffs submit that the Court first had to determine whether there were sufficient facts alleged . . . from which reasonable inferences could be made to determine the existence of a special relationship between defendant United States and Quintana." [Doc. 77 at 11]. Plaintiffs argue that Quintana's record showed "violent propensities against co-habitants in general" (noting an alleged incident of Quintana threatening a landlord) and that "[o]nce Quintana moved in with the Estrada family, they become foreseeable plaintiffs and DEA agents owed them a duty." *Id*. at 15.[1]

Third, Plaintiffs accuse the Court of applying the wrong standard for determining whether private persons in like circumstances would have a duty under New Mexico state law and argues, again, that the circumstances of the present case are analogous to those of a doctor who undertakes supervision and control of a patient with dangerous propensities, or a private investigator or security officer who has similar duties as government law enforcement officials. *Id*. at 23.[2]

Incredibly, Plaintiffs' reply brief fundamentally changes its presentation of New Mexico state law. For the first time ever in this case, after having repeatedly cited law to the contrary both in their original opposition to the United States' motions as well as in their opening brief under Rule 59(e), and without any acknowledgment or explanation to the Court, Plaintiffs cite a

---

1 The United States notes that although Plaintiffs state in their Motion that "the United States was aware of Quintana's residential location from August 2012 through February 20, 2013," [Doc. 77 at 17], the Amended Complaint only states that the DEA was aware "or should have been aware" of Quintana's location, based on DEA policy. [Doc. 78 at 5 n.1 (citing Doc. 19 ¶ 362)].

2 The United States also notes that Plaintiffs failed to seek the United States' position on Plaintiffs' Motion in accordance with Local Rule 7.1(a), which provides that "a motion that omits recitation of a good-faith request for concurrence may be summarily denied." D.N.M.LR-Civ. 7.1(a). [Doc. 78 at 1]. Plaintiffs' counsel explained that the Motion was filed on the eve of family-related travel and counsel forgot to contact opposing counsel. Considering that the United States was not likely to concur on any aspect of Plaintiffs' Motion, the Court ignores this error.

5

relatively new rule under New Mexico law that, contrary to the common law of most states, courts may not consider foreseeability in finding that a defendant did not have a duty or that an existing duty was limited. [Doc. 79 at 1 n.2 (citing *Rodriguez v. Del Sol Shopping Center Assoc.*, 326 P.3d 465 (N.M. 2014))].

Courts in most states hold as a matter of law that if the harm was unforeseeable, the defendant did not have a duty to prevent that harm. *See* 1 Barry A. Lindhahl, Modern Tort Law: Liability and Litigation § 3:17 (2d ed.) ("Foreseeability of injury is generally recognized as a critical element of the duty analysis. . . . Although there is authority that foreseeability may be considered on the issue of causation, the weight of authority is that [foreseeability] is limited to the duty element.").

New Mexico, however, joined a small minority of states in holding that "foreseeability is not a factor for courts to consider when determining the existence of a duty . . . [because it] is a fact-intensive inquiry relevant only to breach of duty and legal cause consideration." *Rodriguez v. Del Sol Shopping Ctr. Assoc.*, 326 P.3d 465 (N.M. 2014) (Chavez, J.).[3] The Court adopted the Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 7 comment j (2010) in holding that "[i]nstead, courts must articulate specific policy reasons, unrelated to foreseeability considerations, when deciding whether a defendant does or does not have a duty or that an existing duty should be limited." *Rodriguez*, 326 P.3d at 474. The Court explained that "[c]ourts should not engage in weighing evidence to determine whether a duty of care exists or should be expanded or contracted—weighing evidence is the providence of the jury." *Id*. at 473. Under *Rodriguez*, "[t]he judge can enter judgment as a matter of law only if the judge concludes that no reasonable

---

3 *See also Gipson v. Kasey*, 150 P.3d 228 (Ariz. 2007) (holding that foreseeability is not a factor to be considered by courts when making a determination of duty, because foreseeability involves an inquiry into the specific facts of the case); *A.W. v. Lancaster Cnty. School Dist.*, 784 N.W.2d 907 (Neb. 2010) (holding that foreseeability is not part of the duty analysis performed by the court but is part of the breach analysis performed by the finder of fact).

jury could decide the breach of duty or legal cause questions except one way." *Id*. at 474.

The Court ordered supplemental briefing, giving the United States an opportunity to respond to Plaintiffs' new argument that the United States owed a duty to Plaintiffs under *Rodriguez*, and allowing Plaintiffs to submit a reply. [Doc. 81]. The Court specifically asked the United States to "address the issue of whether any policy considerations weigh in favor of eliminating or limiting a duty, under the analytical framework set forth by the New Mexico Supreme Court in *Rodriguez*." *Id*. at 2. The United States filed its response to Plaintiffs' new argument on January 6, 2017, [Doc. 82], and Plaintiffs replied on January 12, 2017, [Doc. 83].

## LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) allows a party to file a motion to alter or amend judgment within 28 days of the entry of judgment. "Grounds warranting a [Rule 59(e)] motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Courts should not grant relief under Rule 59(e) where the movant seeks only to "revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id*. (citing *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991)).

## DISCUSSION

First, Plaintiffs' argument that the Court applied the incorrect standard of review fails because the Court did not rely on any evidence external to the FAC in granting judgment on the pleadings. Second, although the Court failed to consider New Mexico's minority rule regarding duty under *Rodriguez*, policy considerations weigh against finding a duty to warn Plaintiffs. Finally, regarding Plaintiffs' negligent supervision claims, Plaintiffs fail to raise an analogous

7

theory of private person liability under New Mexico law.  Therefore, Plaintiffs' Motion must be denied.

> **I. The Court applied the correct standard of review and Plaintiffs are not entitled to discovery.**

Plaintiffs argue that because the United States submitted a declaration in support of their Motion for Judgment on the Pleadings Based on Lack of Subject Matter Jurisdiction, [Doc. 59-1], the Court improperly considered materials outside the pleadings and should have allowed discovery. [Doc. 77 at 8]. Plaintiffs cite Fed. R. Civ. P. 12(d), which provides that "[i]f, on a motion under 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

The Court can quickly dispose of this argument by clarifying that although the United States attached a declaration to their Motion, the Court did not rely on it or other any evidence outside the FAC and its attachments in finding lack of subject matter jurisdiction. The Court's Opinion makes no reference or citation to the declaration submitted. Accordingly, because the Court did not consider any information outside the FAC, the Motion was not converted to a motion for summary judgment and Plaintiffs were not entitled to discovery. *See Hartford Casualty Ins. Co. v. Trinity Universal Ins. Co. of Kansas*, 158 F.Supp.3d 1183, 1196 (D.N.M. 2015) (Vázquez, J.) ("Rule 12(d) authorizes only the Court, and not a party, to convert the motion into one for summary judgment."); *Alexander v. Oklahoma*, 382 F.3d 1206, 1214 (10th Cir. 2004) (suggesting that "to convert the District Court's Rule 12(b)(6) order to one for summary judgment, we must find that the District Court relied on [external] material in rendering its decision"). *But see S.E.C. v. Wolfson*, 539 F.3d 1249, 1264-65 (10th Cir. 2008) (finding that "the district court was

8

obligated to decide the liability issues by reference to the admissible evidence presented by the parties, rather than solely by reference to the complaint's allegations," where the motion for judgment on the pleadings was not filed until after the parties had filed a joint stipulation of facts and both parties had already moved for summary judgment).

Plaintiffs also argue that the Court improperly applied the standard of review under Fed. R. Civ. P. 12(b)(6), which applies under Rule 12(c), because the Court "failed to consider all of the factual allegations set forth in the amended complaint and draw reasonable inferences in the Plaintiffs' favor therefrom to determine the existence of a special relationship between Edward Quintana and the United States." [Doc. 77 at 5]. Plaintiffs argue that "[i]nstead, the Court made inferences in the government's favor." *Id*. at 5-6. Plaintiffs re-list numerous allegations from the FAC that they argue should have been construed in their favor. [Doc. 77 at 13]. The Court reviewed these allegations previously. The only clear error argued by Plaintiffs is that the Court should have found a special relationship between the DEA and Quintana, giving rise to a duty to protect Plaintiffs. All other issues raised by Plaintiffs have or could have been raised at the time of the original motion.

**II.     Under *Rodriguez*, the Court still finds no duty to warn Plaintiffs.**

Plaintiffs' primary argument is that the Court misconstrued New Mexico law and the allegations of the Complaint in finding that the United States did not owe a duty to Plaintiffs. [Doc. 77 at 9-18]. In response, the United States argues that the Court has already correctly construed the applicable law, and that the portions of the Complaint cited in the present Motion do not support Plaintiffs' position. [Doc. 78 at 4-7]. On reply and in their supplemental brief, Plaintiffs argue that under *Rodriguez v. Del Sol Shopping Ctr. Assoc.*, 326 P.3d 465 (N.M. 2014), the Court cannot consider foreseeability in determining the existence of a duty unless there is a

9

"countervailing principle or policy [that] warrants denying or limiting liability in a particular class of cases." [Docs. 79 at 2-3; 83 at 2 (quoting *Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 7*)].

The United States argues that the Court should decline to hear Plaintiffs' argument on the issue of duty because Plaintiffs' Rule 59(e) Motion "merely revisits issues already addressed and advances arguments that could have been raised in prior briefing." [Doc. 78 at 3-4]. Plaintiffs' Motion does not raise new facts or law but rather disputes the Court's analysis and argues that the Court's "reliance on foreseeability considerations to find defendant United States did not owe a duty to plaintiffs was clearly erroneous, resulting in a manifest injustice." [Doc. 83 at 2]. Plaintiffs should have been aware of *Rodriguez* when preparing their opposition to the United States' motion for judgment on the pleadings, and courts generally do not alter judgments where the moving party seeks to "advance arguments that could have been raised in prior briefing." *Servants of the Paraclete*, 204 F.3d at 1012. Nevertheless, out of concern for correcting the Court's application of New Mexico law, the Court considers Plaintiffs' argument under *Rodriguez* and finds that although the Court improperly relied on foreseeability in finding no duty, there are countervailing policy concerns that prevent the Court from finding that the United States owed a duty to warn Plaintiffs about Edward Quintana's dangerous propensities.

This Court erred in finding that because the Complaint indicated that Mr. Quintana's dangerous propensities and contact with the Estrada family were unforeseeable, the DEA did not have a duty to warn the Estrada family. Under *Rodriguez*, it was improper for the Court to focus on the specific allegations in the Complaint in reaching its finding of no duty. The issues of whether the DEA knew about Quintana's dangerous propensities or whether they undertook to supervise Quintana are questions of fact. By evaluating these questions the Court was weighing

evidence, under *Rodriguez*. The proper test for finding a duty in New Mexico, under *Rodriguez*, is whether there are policy considerations such that there should not be a duty. If this Court finds that there are no policy obstacles and there was a duty to warn and protect Plaintiffs, the next question is whether Plaintiffs' claims are nevertheless dismissed as a matter of law because the Complaint fails to plausibly state that the United States breached its duty, or that the breach proximately caused Plaintiffs' harms.

At the time of this writing, there is limited precedent among New Mexico courts finding no duty under *Rodriguez* in light of policy concerns. In *Nat'l Roofing, Inc. v. Alstate Steel, Inc.*, 366 P.3d 276 (N.M. Ct. App. 2015), the court discerned that there is a pre-existing policy of no duty where the plaintiff alleges only unintentional economic injury. The plaintiff's employees were injured while repairing a deck that had been manufactured and installed by the defendants, and the plaintiff sued in negligence based on injuries of increased worker's compensation premiums, money paid to reduce its insurance rating, and lost income from having an altered safety record. The court cited the Third Restatement's rule that "an actor has no general duty to avoid the unintentional infliction of economic loss on another," *id.* at 278 (citing Restatement (Third) of Torts: Liability for Economic Harm Sec. 1(a) (Tentative Draft No. 1, 2012)) in reasoning that "liability for indirect (but foreseeable) consequences to third parties resulting from negligent harm could be limitless given society's proliferation of commercial relationships . . ." *Id.* at 279). The court held that "public policy categorically prohibits recovery under these circumstances [of unintentional economic consequences to third parties]." *Id.* at 282.

More importantly, in *Brown v. Kellogg*, 340 P.3d 1274 (N.M. Ct. App. 2014), the court held that there was no duty where the plaintiff's theory for recovery called for a public policy that did not yet exist. The defendant doctor released a psychiatric patient from the hospital and

11

provided the patient with a medical authorization to return to work without restrictions. The patient was a police officer and used his service weapon to shoot the plaintiff and kill himself. The plaintiff argued that the doctor and hospital had a duty to perform a fitness for duty examination.

Deciding the case shortly after *Rodriguez*, the court held that "there appear to be good policy reasons for rejecting the imposition of a fitness for duty legal obligation on independent healthcare professionals who treat individuals with access to firearms as part of their workplace environment." *Id*. at 1277. The court cited evidence in the record that the test would take two weeks to complete, that hospitals had not ordered this evaluation before, that it was unclear who would conduct the evaluation, who would pay for it, and how the outcome would influence the patient's medical care and workplace limitations. The court also cited that it was unclear how such a requirement would impact law enforcement personnel's desire to seek medical assistance. *Id*. Accordingly, the court declined to "impose an entirely new and novel legal duty upon healthcare professionals without an extensive development of the policy considerations in the record for review." *Id*.

In support of its decision not to create a new policy from whole cloth, the court cited *Torres v. State*, 894 P.2d 386, 389 (N.M. 1995) for the reminder that "[p]olicy determines duty. With deference always to constitutional principles, it is the particular domain of the legislature, as the voice of the people, to make public policy. . . . The judiciary, however, is not as directly and politically responsible to the people as are the legislative and executive branches of government." *Brown*, 340 P.3d at 1277.

With these interpretations of *Rodriguez* in mind, the Court turns to the instant case. Plaintiffs argue that the United States had a duty (1) to warn the Estrada family about Quintana's

dangerous propensities, and (2) to supervise Quintana in order to prevent him from committing violent acts. [Docs. 77 at 18; 79 at 4]. The Court considers each of these duties in turn.

First, a duty to warn certain members of the public about dangers posed by a confidential informant would be creating new policy from whole cloth, impermissibly, as in *Brown*. The law enforcement purpose of using confidential informants is to infiltrate criminal activity. The United States explains in their supplemental brief that "[t]he DEA does not disclose the identity, history, or activities of an informant for the safety of its agents and the informants, and the protection of its mission." [Doc. 82 at 6]. Although the United States cites to a declaration submitted in support of this policy assertion, the Court need not consult or rely on this declaration because the principle is common sense: confidential informants necessarily operate without revealing their status.

In this case, unlike *Brown*, the parties have not developed a detailed record allowing the Court to fully assess the policy interests with respect to warning certain members of the public about the dangerous propensities of a confidential informant. Having not considered the issue of duty under *Rodriguez* until Plaintiffs raised it on reply to their Rule 59(e) Motion, the Court only has the parties' supplemental briefs to guide its understanding of the policy issues surrounding safety and the use of confidential informants. Nevertheless, the parties' arguments clearly demonstrate that an obligation to disclose a confidential informant's identity to certain members of the public would be a new policy. Such a disclosure obligation would interfere with the law enforcement mission, put the safety of agents and the confidential informant at risk, and create a need for additional measures to mitigate this risk. The Court is also cognizant of the risk that such a policy could have a chilling effect on the use of confidential informants, as potential informants may perceive the arrangement to be untrustworthy in protecting their identity, and law

enforcement may perceive the use of confidential informants to be both less safe as well as unduly burdensome. These concerns indicate that Plaintiffs are asking the Court to find a duty in the face of a countervailing general principle that confidential informants must remain confidential.

Because the Court has identified competing policies and principles about preserving informant confidentiality, the Court would be creating a new policy from whole cloth, which is "the particular domain of the legislature, as the voice of the people, to make public policy." *See Brown*, 340 P.3d at 1277. In sum, because a duty to warn members of the public about a confidential informant's dangerous propensities would be an entirely new obligation, complicating current policies and procedures for using confidential informants, the Court finds that such a duty would not be recognized under *Rodriguez*.

### III. Plaintiffs' negligent supervision claims do not allege sufficiently analogous private person liability under New Mexico law.

Plaintiffs also argue that the United States had a duty under DEA policy and New Mexico tort law to supervise Quintana in order to prevent his violent actions. With regard to DEA policy, Plaintiffs attach a copy of "The Attorney General's Guidelines Regarding the Use of Confidential Informants," which does not "create any enforceable legal right or private right of action by a [confidential informant] or any other person," but which does require an initial determination of whether a potential confidential informant "is reasonably believed to pose a danger to the public or other criminal threat," and, if hired, that this and other factors are reviewed "at least annually" by a case agent. [Doc. 83-1 at 7, 9]. Plaintiffs argue that "this Court cannot find that as a matter of law, it is established public policy that the duty owed by defendant United States to Plaintiffs should be eliminated or modified because decisions as to informants are discretionary by federal law enforcement and not subject to review." [Doc. 83 at 7].

Plaintiffs fundamentally misapprehend the issue before the Court. Although the DEA may have policies regarding the hiring and supervision of confidential informants for the express purpose of preventing violence, including the violence that occurred in this case, alleged violations of these policies are not actionable by Plaintiffs merely because these internal policies exist. DEA internal policy does not give rise to state law tort duties. *See United States v. Agronics, Inc.*, 164 F.3d 1343, 1346 (10th Cir. 1999) (finding no FTCA waiver where federal agency allegedly breached its statutory duty to exercise complete and exclusive regulatory jurisdiction over a mining facility). Plaintiffs' claims have been brought against the United States under the FTCA, the only vehicle for permeating sovereign immunity, which requires an analogous theory of private person liability under New Mexico law in order to state a claim. New Mexico law, under *Rodriguez*, generally finds a duty unless there are countervailing policy concerns. Therefore, regarding Plaintiffs' allegations of negligent supervision, the issue before the Court is whether the FAC alleges analogous private person liability under New Mexico law that is not hampered by policy concerns against finding a duty. The DEA's alleged violation of its own policies may state a cause of action under the FTCA only if this test is satisfied.

In support of their theory that the United States had a duty to supervise Quintana in a way that would have protected plaintiffs such as the Estrada family from harm, Plaintiffs cite the theory of liability in which a defendant has a duty to protect another from the criminal acts of a third person when the defendant has a special relationship with the third person. [Doc. 83 at 4]. Plaintiffs again assert, as they did in prior briefing, that the DEA had a special relationship with Quintana when they "voluntarily t[ook] the custody and control of" Quintana by employing him as an informant. *Id*.

First, without running afoul of *Rodriguez*, the Court still finds that the special relationship theories propounded by Plaintiffs are insufficiently analogous. Plaintiffs must cite to New Mexico caselaw finding a private person liable in comparable circumstances. *See Coffey*, 870 F. Supp. 2d at 1220; 28 U.S.C. § 1346(b)(1). In their Rule 59(e) Motion, Plaintiffs argue that "[t]he special relationship case law in New Mexico typically involves situations where there is a supervisory or treatment relationship, or where there is control over another." [Doc. 77 at 11]. Plaintiffs cite cases in which a doctor exerted control over a patient for the express purpose of preventing the patient from committing violent acts. *Id*. at 11-12 (citing *Kelly v. Board of Trustees*, 529 P.2d 1233 (N.M. Ct. App. 1974); *Stake v. Woman's Div. of Christian Serv.*, 387 P.2d 871 (N.M. 1963)). The analogy between a doctor who has total custody and control over a committed patient, and law enforcement officials who have hired a confidential informant and supervise him, but not for the main purpose of preventing the informant from committing violence, is insufficient. A doctor exercises a substantially greater degree of control over a committed patient. In contrast, the relationship between the United States and Quintana is that of employer and employee and is not subject to total control as in the psychiatric context.

Plaintiffs also analogize to a private investigator who enlists a dangerous person as his informant. [Doc. 79 at 11 (citing *Karbel v. Francis*, 709 P.2d 190 (N.M. Ct. App. 1985)]. The Court considered and rejected this analogy in its previous opinion, and Plaintiffs do not raise any new evidence or law. While Plaintiffs are correct that the private person analogue need only be comparable and not identical, and while the Court erred in considering foreseeability when distinguishing *Karbel*, the analogy to a private investigator still fails because Plaintiffs have not cited New Mexico state law in support of their theory. The security guards in *Karbel* were charged with ensuring campus safety, they confronted an obviously intoxicated person, and the

16

court held that the "guards, in the exercise of their duties, undertook to remove Francis from campus." *Karbel*, 709 P.2d at 193. Here, Quintana was merely employed as a confidential informant. The DEA did not take control over Quintana's behavior in the way that a private security officer seeks to control a drunk and erratic individual. Nor does *Karbel* suggest that New Mexico holds private investigators responsible for hiring informants with dangerous propensities.

Accordingly, notwithstanding *Rodriguez*, Plaintiffs have not alleged a special relationship giving rise to a duty under New Mexico law and the FTCA. The FAC only alleges that the DEA hired Quintana as an informant, not that it took custody over Quintana, and the allegations are tenuous as to what control the DEA exerted over Quintana. For example, Plaintiffs assert in their Rule 59(e) Motion that the FAC alleges the DEA knew Quintana was living with the Estrada family. [Doc. 77 at 17]. In fact the FAC alleges only that the DEA knew or should have known Quintana's residential address, according to DEA policy. [Doc. 19 ¶¶ 124, 364]. The FAC fails to plausibly allege that the DEA took control over Quintana in order to prevent him from committing violence. Quintana was hired by the DEA for the purpose of assisting in law enforcement operations. The relationship is more aptly characterized as that of employer-employee, rather than doctor-patient. Accordingly, the Court reiterates, as it did in its prior Opinion, that Plaintiffs fail to state a claim under the FTCA. The allegations are not sufficiently analogous to the liability of private persons under New Mexico law.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Alter or Amend the Court's Memorandum Opinion and Judgment as to Defendant United States [Doc. 77] is DENIED.

DATED this 26th day of April, 2018.

_____
MARTHA VÁZQUEZ
United States District Judge

Erlinda O. Johnson                                         Karen Grohman
**Law Office of Erlinda Ocampo Johnson**   Ruth Fuess Keegan
*Attorney for Plaintiffs*                                **Assistant U. S. Attorneys**
                                                           *Attorneys for Defendants*